**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Thomas Joseph CHIANTESE and John Joseph Cerrella, Defendants-Appellants.**

No. 75–3534.

United States Court of Appeals,
Fifth Circuit.

Oct. 27, 1978.

Rehearing and Rehearing En Banc
Denied Dec. 13, 1978.

George D. Gold, Miami, Fla., James J. Hogan, Miami Beach, Fla., for defendants-appellants.

Jack V. Eskenazi, U.S. Atty., Miami, Fla., Ann T. Wallace, George S. Kopp, Atty., Dept. of Justice, Washington, D.C., Gary L. Betz, Sp. Atty., Dept. of Justice, Miami, Fla., for plaintiff-appellee.

Before BROWN, Chief Judge, and TUTTLE and TJOFLAT, Circuit Judges.

TJOFLAT, Circuit Judge:

This case is before us on remand from the court sitting en banc. Our initial disposition reversed the convictions of Chiantese and Cerrella[1] because the district court had employed what has come to be known as the "*Mann* instruction."[2] *United States v. Chiantese*, 546 F.2d 135 (5th Cir. 1977). The trial judge incorporated the following version of the *Mann* charge in his final instructions to the jury:

As a general rule it is reasonable to infer that a person ordinarily intends all the natural and probable consequences of acts knowingly done or knowingly omitted. *So, unless the evidence in the case*

*leads the jury to a different or contrary conclusion*, the jury may draw the inference and find that the accused intended all the natural and probable consequences which one, standing in like circumstances, and possessing like knowledge, should reasonably have expected to result from any act knowingly done or knowingly omitted by the accused.

Record, vol. 1, at 790; *id.*, vol. 4, at 593–94 (emphasis supplied). The instruction is objectionable because the emphasized language may be read to shift the burden of proof on the issue of criminal intent from the Government to the defendant. *E. g.*, *Mann v. United States*, 319 F.2d 404, 409 (5th Cir. 1963), *cert. denied*, 375 U.S. 986, 84 S.Ct. 520, 11 L.Ed.2d 474 (1964).

To reach our original disposition, we felt compelled to formulate a rule of automatic reversal. The district courts of this circuit had continued to give the instruction, perhaps because several of our cases, although inveighing against the charge, had found its use not reversible error. We also intimated that the court had erred in not conducting a hearing to determine whether a conversation among the jurors concerning the attorney for Chiantese was impermissibly prejudicial.

This case was reheard before the court en banc to reexamine this panel's holding on the *Mann* issue. *United States v. Chiantese*, 560 F.2d 1244 (5th Cir. 1977) (en banc). Judge Clark, writing for the en banc court, exhaustively reviewed the history of the *Mann* charge and its confused story in this circuit. *Id.* at 1246–55. Invoking the court's supervisory powers, he set forth for the district courts explicit guidelines, which, by the terms of the opinion, were to apply to trials commenced after ninety days of its publication. He prohibited the district courts from employing the *Mann* instruction in any of its forms but

---

1. The defendants were convicted of attempting to interfere with interstate commerce by extortion, in violation of the Hobbs Act, 18 U.S.C. §§ 2, 1951 (1976).

2. The cognomen derives from our decision in *Mann v. United States*, 319 F.2d 404 (5th Cir. 1963), *cert. denied*, 375 U.S. 986, 84 S.Ct. 520, 11 L.Ed.2d 474 (1964), in which we held that employment of the prohibited instruction constituted plain error.

refused to establish a per se rule of reversal. The sanction for giving the instruction is that, in determining the prejudicial effect of the instruction, this court will not consider charges by the trial judge correctly setting forth the Government's burden of proof.[3] Convictions may still be upheld if it is determined under the circumstances of the given case that the harm engendered by the instruction does not rise to the level of reversible error, but this determination "shall not include consideration of whether a defective charge has been cured by prior or subsequent statements." *Id.* at 1255.

Accordingly, the en banc court vacated "[t]hat portion of the panel opinion in this action predicating reversal of the convictions of the defendants on the use of the *Mann* charge" and remanded the case to us "with directions to reconsider the rights of the defendants in light of this decision." *Id.* at 1256. In compliance with these directives, we determine that the instruction given below does not require reversal.

We have also found it necessary to reexamine our discussion of the district court's handling of the juror's misconduct. On reconsideration, we determine that our original thoughts were in error, and we hold that the failure of the judge to conduct a hearing to determine the effect of the conversation does not require reversal. The defendants assert three additional grounds for reversal, none of which has merit. We discuss them below. Therefore, we affirm the convictions of Chiantese and Cerrella.

### The Mann Instruction

The en banc opinion requires us to apply the standards governing cases tried before the effective date of the guidelines set forth in that opinion. The en banc court directed that its prophylactic measures apply "in all trials commenced 90 days after the date of this opinion," 560 F.2d at 1255, and that they "are to be applied prospectively only."[4] *Id.* at 1256. Therefore, we shall weigh the prejudice of the instruction given below in the context of the charge as a whole. See note 3 *supra.*

We think that whatever untoward effect the prohibited instruction may have had in this case was vitiated by other instructions concerning the Government's burden of proof. The record is replete with statements to the effect that the Government has the burden of proving guilt beyond a reasonable doubt[5] and this burden never shifts to the defendant,[6] that a defendant

---

3. A number of our cases had determined that the error in giving the instruction was not basis for reversal when viewed in light of other, curative instructions. *E. g., United States v. Netterville,* 553 F.2d 903 (5th Cir. 1977), *cert. denied,* 434 U.S. 1009, 98 S.Ct. 719, 54 L.Ed.2d 752 (1978); *United States v. Roberts,* 546 F.2d 596 (5th Cir.), *cert. denied sub nom. Mancini v. United States,* 431 U.S. 968, 97 S.Ct. 2927, 53 L.Ed.2d 1064 (1977).

4. The en banc court has fashioned a "purely prospective" ruling, that is, one that "does not apply even to the parties before the court." *Linkletter v. Walker,* 381 U.S. 618, 621–22, 85 S.Ct. 1731, 1733, 14 L.Ed.2d 601 (1965) (footnote omitted). Although rare, rulings of purely prospective application are not without precedent. *E. g., England v. Louisiana State Bd. of Medical Examiners,* 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964).

That the standards enunciated by the en banc court do not apply to this case is wholly consonant with the reasoning of the court, which recognizes that "our precedents over 14 years furnish no consistent or predictable rule that would encourage the change." 560 F.2d at

1255. In view of the "ineffective communication" between this court and the district courts, the en banc court postponed the effect of its ruling by the 90 day period. *Id.*

Even in the context of nonsupervisory adjudication, federal courts apparently do not lack power to fashion such relief. *See Linkletter v. Walker,* 381 U.S. at 622 n. 3, 85 S.Ct. at 1733. Of course, purely prospective rulings are wholly within this court's supervisory powers, which were explicitly invoked by the en banc court in this case. 560 F.2d at 1255.

5. For example, the court gave the following instructions: "The Government has the burden of proving guilt beyond a reasonable doubt before a jury can return a verdict of guilty." Record, vol. 3, at 33. "The Government is required to establish each of these elements beyond reasonable doubt." *Id.,* vol. 4, at 593.

6. "The burden, as I said, is always upon the prosecution to prove guilt beyond a reasonable doubt." Record, vol. 3, at 36. "The burden is always upon the prosecution to prove guilt beyond a reasonable doubt. This burden never shifts to a defendant . . . ." *Id.,* vol. 4, at 590.

need not call witnesses or come forth with evidence to avoid conviction,[7] that the jury should consider the instructions as a whole and not individually,[8] and that the law presumes a defendant to be innocent and this presumption alone is sufficient to acquit unless the jury finds guilt beyond a reasonable doubt.[9]

The law as it stood before the en banc opinion in this case, and therefore the law applicable here, was that the use of *Mann* instructions "is reversible error only when they mislead the jury to the extent that they tend to reverse the burden of proof in the jury's mind . . . . The complained-of instruction must remain uncured in the context of the full charge to require overturning the jury's verdict." *United States v. Netterville*, 553 F.2d 903, 917 (5th Cir. 1977) (citations omitted), *cert. denied*, 434 U.S. 1009, 98 S.Ct. 719, 54 L.Ed.2d 752 (1978). We think it manifest that the instructions given by the court below would leave no doubt in a juror's mind that the burden of proof on the issue of criminal intent remains invariably upon the Government. *Id.; United States v. Roberts*, 546 F.2d 596, 598–99 (5th Cir.), *cert. denied*, 431 U.S. 968, 97 S.Ct. 2927, 53 L.Ed.2d 1064 (1977); *United States v. Duke*, 527 F.2d 386, 391–93 (5th Cir.), *cert. denied*, 426 U.S. 952, 96 S.Ct. 3177, 49 L.Ed.2d 1190 (1976).

Moreover, several of these curative instructions were given in close proximity to the *Mann* charge,[10] a factor found to mitigate the effect of the proscribed instruction. *See United States v. Durham*, 512 F.2d 1281, 1288 (5th Cir.) (noting significance of close proximity but finding even remotely placed instructions sufficient to cure *Mann* error), *cert. denied*, 423 U.S. 871, 96 S.Ct. 137, 46 L.Ed.2d 102 (1975); *United States v. Jenkins*, 442 F.2d 429, 438 (5th Cir. 1971).

We find the curative instructions given by the trial judge sufficient to rectify the *Mann* error, but we take note of an additional ground to sustain our disposition. It is established in this circuit that the giving of the *Mann* charge is not always fatal if there is 'evidence before the jury of objective conduct demonstrating criminal intent.[11] *United States v. Durham*, 512 F.2d at 1288; *United States v. Wilkinson*, 460 F.2d 725, 733 (5th Cir. 1972); *Helms v. United States*, 340 F.2d 15, 18–19 (5th Cir. 1964), *cert. denied*, 382 U.S. 814, 86 S.Ct. 33, 15 L.Ed.2d 62 (1965). We believe the facts developed at trial demonstrated ample objective conduct to support a jury finding on the intent issue.

This case concerns the competition between two valet parking services operated at bars and night clubs in the Fort Lauder-

---

7. "[T]he defendant may or may not produce any evidence. A defendant does not have to do so. A defendant really doesn't even have to cross examine the Government's witnesses." Record, vol. 3, at 33. "The jury will always bear in mind that the law never imposes upon a defendant in a criminal case the burden or duty of calling any witness or producing any evidence and no adverse inferences may be drawn from the failure to do so." *Id.*, vol. 4, at 589; *accord, id.* at 590, 593.

8. "The jury should not single out any one single instruction or ignore any one instruction, but consider all of them as stating the law applicable to the case." Record, vol. 3, at 34.

9. The law presumes a defendant to be innocent of crime, thus a defendant, although accused, begins the trial with a clean slate—with no evidence against him. And the law permits nothing but legal evidence presented before the jury to be considered in support of any charge against an accused. So, the presumption of innocence alone is sufficient to

acquit a defendant unless the jury is satisfied beyond a reasonable doubt of the defendant's guilt after careful and impartial consideration of all the evidence in the case.
Record, vol. 3, at 35.

10. The *Mann* instruction appears at pages 593–94 of volume 4 of the record. Curative instructions appear at pages 589, 590, and 593. See notes 5–7 *supra.*

11. This ground for upholding verdicts where *Mann* charges are given apparently survives the en banc opinion in this case. As the en banc opinion states:

If, despite our action today, the error should recur, the weighing of its harm to the accused shall remain a judicial matter to be resolved in the context of each case where it occurs. Such weighing, however, shall not include consideration of whether a defective charge has been cured by prior or subsequent statements.
560 F.2d at 1255.

dale, Florida, area. Chiantese and Cerrella owned one service, and the other was owned by Mark Parnass, the chief Government witness. The evidence adduced at trial indicated that the defendants had repeatedly threatened Parnass in an attempt either to force him to join in a "partnership" with them or to get out of the parking lot business. Parnass testified that Cerrella told him to pay one third of his business profits to Cerrella or go out of business.[12] He also testified that Cerrella threatened that he and Chiantese knew where Parnass and his family lived and that "we will hurt you if we have to." Record, vol. 3, at 153. Additionally, a tape recording of a conversation between Parnass and Cerrella, which had been made by means of a transmitter placed on Parnass, was played for the jury. During that conversation, Cerrella told Parnass to get out of the parking lot business, "Or I'm gonna put you in a box." *Id.,* vol. 4, at 411. The recording also contained the following statement by Cerrella: "I ain't coming back with another deal . . . . [Y]ou can tell the Feds, you can tell the _____ local cops. I'll put you in the _____ hospital, you'll come out and know I did it and I'll put you in again." *Id.* at 412.

In view of this evidence, it is clear that "the jurors were not reduced solely to presuming intent . . . . [T]he government's case did not rest upon mere implications of evil motive, but was supported by affirmative objective evidence of that particular element of the alleged crime." *United States v. Wilkinson,* 460 F.2d 725, 733 (5th Cir. 1972). We find the employment of the *Mann* charge in this case not reversible error.[13]

### The Juror's Remarks

During the course of the trial, Chiantese's attorney informed the court that he had observed a member of the jury conversing with another juror and two alternate jurors. The attorney also related that a student who had been working at his firm had overheard a juror state to two alternate jurors during cross-examination by Cerrella's attorney, "Stupid. Stupid. He's a pain in the ___." Record, vol. 4, at 407. Chiantese's attorney requested that the judge voir dire the jury to determine if the statement had in fact been made and, if so, what effect it had had on those hearing it. The court declined, reasoning that an exchange between jurors was not analogous to the typical jury prejudice case, in which outside influences impermissibly taint the verdict. The judge also observed that the statements did not relate to the case itself but to the attorney's conduct and that "[j]urors obviously form impressions of counsel as the trial goes on." *Id.* at 408.

■ We must begin with the recognition that the decision to hold a hearing to determine whether juror misconduct has occurred is within the sound discretion of the trial judge and that his ruling will not be reversed unless it constitutes an abuse of that discretion. *United States v. Hendrix,* 549 F.2d 1225, 1227–29 (9th Cir.), *cert. denied,* 434 U.S. 818, 98 S.Ct. 58, 54 L.Ed.2d 74 (1977); *United States v. Khoury,* 539 F.2d 441, 443 (5th Cir. 1976), *cert. denied,* 429 U.S. 1040, 97 S.Ct. 739, 50 L.Ed.2d 752 (1977); *Tillman v. United States,* 406 F.2d 930, 938 (5th Cir.), *vacated on other grounds,* 395 U.S. 830, 89 S.Ct. 2143, 23 L.Ed.2d 742 (1969). We find the trial judge within his discretion in declining to hold a hearing in this case.

**12.** Parnass's testimony was as follows: "He [Cerrella] said, 'If you want to stay in the parking lot business, we are going to take a third.' . . . And I said, "Are you saying you want to buy into my business?' He said, 'No. We don't buy, we take.' " Record, vol. 3, at 135.

**13.** In *United States v. Schilleci,* 545 F.2d 519 (5th Cir. 1977), we found error in the giving of a *Mann* instruction. Chiantese's and Cerrella's case is clearly distinguishable. In *Schilleci,* we

placed emphasis on the failure of the trial judge to admonish the jury "to view the charge as an integrated whole." *Id.* at 525. Additionally, we noted, "there was very little objective conduct on the part of the defendant[s]." *Id.* Here the judge expressly instructed the jury to consider the charge as a whole, see note 8 *supra,* and there was an abundance of objective conduct from which the jury could find the requisite intent.

We realize that in instances where the jury misconduct involves influences from outside sources, the failure of the trial judge to hold a hearing constitutes an abuse of discretion and is therefore reversible error. *United States v. Herring,* 568· F.2d 1099, 1103–06 (5th Cir. 1978); *Richardson v. United States,* 360 F.2d 366, 369 (5th Cir. 1966). This is so because a presumption of prejudice arises when the outside influence is brought to the attention of the trial court, *Remmer v. United States,* 347 U.S. 227, 229, 74 S.Ct. 450, 451, 98 L.Ed. 654 (1954), and it is incumbent upon the Government to rebut that presumption at a hearing, *id.; Richardson v. United States,* 360 F.2d at 369. But here there was no outside influence, and we consider this a point of distinction.

The insinuation of outside influences is inimical to the premises upon which our system of justice rests. As Justice Holmes wrote, "The theory of our system is that the conclusion to be reached in a case will be induced only by evidence and argument in open court, and not by any outside influence, whether of private talk or public print." *Patterson v. Colorado,* 205 U.S. 454, 462, 27 S.Ct. 556, 558, 51 L.Ed. 879 (1907). Although we certainly do not sanction the actions of the juror in this case, we do not think they rise to the magnitude of the fundamental prejudice inherent in cases of outside influence. The juror's statements concerned the manner in which Cerrella's attorney conducted himself in making his case. Her observations related to an aspect inseverable from our adversary system of justice, an aspect we would be naive to presume is not considered by jurors.

We do not think, therefore, that the principles governing outside influence should control here. Another line of precedent is closer to our case, but we do not find it controlling. It concerns the impropriety of jurors discussing a case among themselves before they retire to arrive at a verdict. The primary reason for prohibiting such discussion is that the members of the jury may form opinions about the case before all the evidence is in and before the arguments of counsel and instructions of the court have been heard. *Winebrenner v. United States,* 147 F.2d 322, 328 (8th Cir. 1945), *cert. denied,* 325 U.S. 863, 65 S.Ct. 1197, 89 L.Ed. 983 (1945). A juror, having formed an opinion, may be reluctant to consider the remaining evidence objectively.

Our case does not fit well in this mode of analysis because the juror's remarks did not concern the merits of the defense. Of course, the jury may form opinions about a defendant's case because of the way his counsel conducts it, but the juror here did not commit herself to any outcome in the case or demonstrate a prejudgment of the evidence. *See United States v. Burke,* 496 F.2d 373, 377 (5th Cir. 1974). She simply reacted to the apparently overzealous cross-examination by Cerrella's attorney.[14] *Cf. Tillman v. United States,* 406 F.2d 930, 936–38 (5th Cir.) (upholding trial judge's exercise of discretion in not declaring mistrial, after questioning jurors, when it was reported that a juror had said defendants should be "hung"), *vacated on other grounds,* 395 U.S. 830, 89 S.Ct. 2143, 23 L.Ed.2d 742 (1969).

The precedent most apposite here is *Milam v. United States,* 322 F.2d 104 (5th Cir. 1963). In *Milam,* a juror was overheard saying to two other jurors that if he were a witness in the case, he "would sue the defense lawyer . . .. for all he was worth for the way he was harassing witnesses." *Id.* at 110. The trial judge refused to grant a mistrial but did, however, hold a hearing, after which he decided to replace the juror who had made the remark and to allow the attorney to remain in the courtroom for "consultative purposes" only. *Id.* at 111. We affirmed the trial judge's ruling and made the following observations, which are of pertinence here:

The jurors had not talked about the case, they had expressed no feelings as to the

14. The judge at one point admonished Cerrella's attorney to lower his voice. Record, vol. 4, at 388.

outcome, and the two listening jurors had not replied to the remark. One juror made one remark about one defense counsel. The juror was discharged, the defense counsel resigned from the case, and the trial proceeded. We find no error.

*Id.* What we must determine here is whether *Milam* sets forth the outer boundaries of the trial judge's discretion in a case like this. We hold that it does not and find the judge's actions below proper.

In determining whether to conduct a hearing in a case such as this, the court must balance the probable harm resulting from the emphasis such action would place upon the misconduct and the disruption involved in conducting a hearing against the likely extent and gravity of the prejudice generated by that misconduct. We, as an appellate tribunal, are in a poor position to evaluate these competing considerations; we have only an insentient record before us. The trial court is in a far better position to judge the mood at trial and the predilections of the jury. The trial court, therefore, must enjoy a broad discretion in these matters. One hundred years ago the Supreme Court so recognized: "it must be made clearly to appear that upon the evidence the Court ought to have found the juror had favored such an opinion that he could not in law be deemed impartial. The case must be one in which it is manifest the law left nothing to the 'conscience or discretion' of the court." *Reynolds v. United States,* 98 U.S. 145, 156, 25 L.Ed. 244 (1878).

Assuming that the juror made these statements, as we must in the absence of a hearing below, *Richardson v. United States,* 360 F.2d 366, 369 (5th Cir. 1966), we do not think the juror "could not in law be deemed impartial." Her remarks did not concern the defendants' case and they did not relate to any fact, within or extrinsic to the evidence before the jury. We cannot say that the trial judge abused his discretion in determining that the potential prejudice was outweighed by the probable harm resulting from the conducting of a hearing.

### Additional Issues

■ The defendants assert that the evidence was not sufficient to demonstrate that their conduct affected interstate commerce, a jurisdictional prerequisite to a violation of the Hobbs Act, 18 U.S.C. § 1951 (1976).[15] The Supreme Court has recognized that the Hobbs Act "speaks in broad language, manifesting a purpose to use all the constitutional power Congress has to punish interference with interstate commerce by extortion, robbery, or physical violence." *Stirone v. United States,* 361 U.S. 212, 215, 80 S.Ct. 270, 272, 4 L.Ed.2d 252 (1960). Hence, "[a]ll that is required is that trade be affected by extortion 'in any way or degree.'" *United States v. Nakaladski,* 481 F.2d 289, 298 (5th Cir. 1973) (quoting *Carbo v. United States,* 314 F.2d 718, 732 (9th Cir. 1963)); *United States v. Amato,* 495 F.2d 545, 548 (5th Cir.), *cert. denied,* 419 U.S. 1013, 95 S.Ct. 333, 42 L.Ed.2d 286 (1974). We find the potential effect on Parnass's business, had the extortionate scheme carried through, sufficient to satisfy these minimal standards.[16]

■ Chiantese contends that the evidence was insufficient to establish that he aided and abetted the extortion attempt.

---

**15.** Section 1951 provides in pertinent part as follows:

> (a) Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined not more than $10,000 or imprisoned not more than twenty years, or both.

**16.** There was testimony to the effect that Parnass purchased from New York apparel for his employees, Record, vol. 3, at 105–06, and that out-of-state automobiles parked at his lot on a continuing basis. *Id.* at 103–05; *id.,* vol. 4, at 356–63. Parnass's lot was insured by an out-of-state company, *id.,* vol. 3, at 107, and he purchased gasoline for his lot's automobile with credit cards issued by out-of-state companies, *id.* at 108.

It is true that Cerrella was the primary motivator of the extortionate plan. He was the one who made the threats. It is also true that Chiantese was present at the meetings where Cerrella uttered these threats. Parnass characterized Chiantese's role in these meetings as follows: "after Mr. Cerrella would threaten me or whatever [Chiantese] would take the part of being the good guy and say: 'It will be all right. We will do something together.' " Record, vol. 3, at 285–86. On two occasions, Chiantese arranged meetings by calling Parnass and telling him that Cerrella wanted to see him. During the last meeting, at which Parnass agreed to "join forces" with Chiantese and Cerrella, it was decided that Chiantese "would take care of everything" and that Parnass would not deal with Cerrella. *Id.* at 165. Subsequently, Chiantese informed Parnass that he, Chiantese, would start replacing Parnass's employees and would "work out the details of coordinating the operation." *Id.* at 167. Chiantese also suggested to Parnass that they expand their business and that someone might "run over [the operator of a competing lot] with a car." *Id.* at 181.

Viewing the evidence in the light most favorable to the Government, as we must under *Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 475, 469, 86 L.Ed. 680 (1942), we find ample evidence to support the verdict against Chiantese. To establish aider and abettor liability, the evidence must show that the defendant " 'in some sort associate himself with the venture, that he participate in it as something that he wishes to bring about, that he seek by his action to make it succeed.' " *United States v. Trevino,* 556 F.2d 1265, 1269 (5th Cir. 1977) (quoting *Nye & Nissen v. United States,* 336 U.S. 613, 619, 69 S.Ct. 766, 770, 93 L.Ed. 919 (1949)). It cannot be doubted that Chiantese was fully aware of the extortionate plan. He was present at the crucial meetings. We think that the jury would be entirely justified in making the reasonable inference that Chiantese played the "good guy" in a "bad guy"-"good guy" scheme. Indeed, that is what Parnass suggested at trial. That Chiantese contacted Parnass to set up meetings at Cerrella's request, after Chiantese was well aware of Cerrella's motives, and that Chiantese was to serve as the representative of Cerrella's interests in the final plan, abundantly indicates that Chiantese desired that the plan carry through.

■ The final ground asserted by the defendants is that the trial judge abused his discretion in declining to order a presentence report. The court did afford the defendants and their counsel the opportunity to say anything on the defendants' behalf "that would be of assistance to the Court . . . in determining [the] sentence the Court is going to impose." Record, vol. 4, at 610. Although the defendants themselves did not accept the invitation, counsel for both of them did point out that both defendants were first-time offenders, that no actual harm had come to Parnass or his family, and that no money had actually changed hands. Chiantese's attorney noted also that his client had not initiated the extortion attempt. Under these circumstances, the failure to order a report prior to sentencing was not an abuse of discretion.[17] *See United States v. Kane,* 450 F.2d 77 (5th Cir. 1971), *cert. denied,* 405 U.S. 934, 92 S.Ct. 954, 30 L.Ed.2d 810 (1972); *United States v. Fannon,* 403 F.2d 391, 394 (7th Cir. 1968), *vacated on other grounds,* 394 U.S. 457, 89 S.Ct. 1224, 22 L.Ed.2d 416 (1969).

### Conclusion

For the foregoing reasons, we find no reversible error. Therefore, the convictions of Chiantese and Cerrella are

AFFIRMED.

17. Fed.R.Crim.P. 32(c)(1), as it read at the time of sentencing below, did not require the court to state its reasons for not having an investigation. An amendment to the rule, effective December 1, 1975 (three months after Chiantese and Cerrella were sentenced), imposed such a requirement. Nevertheless, the court did state that, given the evidence before him, he did not see the need for a presentence report. "A lifelong career as a choir boy and do-gooder in church and civic organizations would not really take the sting at all out of the evidence that has been presented in the courtroom." Record, vol. 4, at 615.