**UNITED STATES of America,
Plaintiff-Appellee,**

**v.**

**James Ralph LONG,
Defendant-Appellant.**

**No. 80–3671.**

United States Court of Appeals,
Fifth Circuit.

Unit A

Sept. 25, 1981.

---

Joe D. Pegram, Oxford, Miss., for defendant-appellant.

George L. Phillips, U. S. Atty., Daniel E. Lynn, Asst. U. S. Atty., Jackson, Miss., for plaintiff-appellant.

Before RUBIN, RANDALL and TATE, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

The defendant was convicted of a crime for which life imprisonment was mandatory. The term of a sentence, however, is not the only decision to be made in sentencing a person convicted of crime. Because the trial judge sentenced the defendant to a term of life imprisonment without, as Fed.R. Crim.P. 32 requires, either obtaining a presentence report or finding that there was sufficient information in the record to enable the meaningful exercise of sentencing discretion, we vacate the sentence and remand for resentencing.

After a three-day trial, a jury found James Long guilty of first degree murder committed on the Keesler Air Force Base, in violation of 18 U.S.C. § 1111, but without capital punishment. Upon receiving the verdict, the district judge adjudged the defendant to be guilty and said: "I will defer sentence to await receipt of a pre-sentence report . . . ." After a colloquy about bond, the judge asked when he might expect a presentence report; the probation officer requested three weeks. The Assistant United States Attorney then advised the court that life imprisonment was mandatory and that, therefore, no presentence investigation was "necessary." The district judge then called upon Long for a statement before sentence was imposed, and, after giving Long an opportunity for allocution, sentenced him to life imprisonment. Long's conviction was affirmed by us, 608 F.2d 1372 (5th Cir. 1979) (mem.), and a writ of certiorari was denied by the Supreme Court, 445 U.S. 930, 100 S.Ct. 1319, 63 L.Ed.2d 763 (1980).

Long then filed a motion for correction of sentence pursuant to Fed.R.Crim.P. 35 because he had been sentenced by the judge acting without the presentence report required by Fed.R.Crim.P. 32(c), and sought a reduction of his sentence.

The life sentence that is mandatory for first degree murder may be coupled with a recommendation that the defendant shall be eligible for parole after serving some lesser term.[1] *United States v. Busic,* 592 F.2d 13, 25, 26–27 (2d Cir. 1978). Whether or not such a recommendation for possible future clemency should be made was critical to the defendant, for it might be decisive in requiring him to be actually confined for a minimum period of ten years

1.  18 U.S.C. § 4205(a) provides:

Whenever confined and serving a definite term or terms of more than one year, a prisoner shall be eligible for release on parole after serving one-third of such term or terms or after serving ten years of a life sentence or of a sentence of over thirty years, except to the extent otherwise provided by law.

*Id.* § 4205(b), however, provides in pertinent part:

Upon entering a judgment of conviction, the court having jurisdiction to impose sentence, when in its opinion the ends of justice and best interest of the public require that the defendant be sentenced to imprisonment for a term exceeding one year, may (1) designate in the sentence of imprisonment imposed a minimum term at the expiration of which the prisoner shall become eligible for parole, . . . or (2) the court may fix the maximum sentence of imprisonment to be served in which event the court may specify that the prisoner may be released on parole at such time as the Commission may determine.

or in determining whether he would be eligible for earlier parole. In addition, the sentencing judge may recommend the type of institution to which the defendant shall be confined and the location where he shall serve his sentence. *See, e. g.*, Fed.R. Crim.P. app., form 25; *Greathouse v. United States*, 548 F.2d 225, 227 (8th Cir.), *cert. denied*, 434 U.S. 838, 98 S.Ct. 130, 54 L.Ed.2d 100 (1977). Although not a part of the sentence, the decision of prison authorities [2] on these matters is obviously of great importance to the person confined for they determine the ability of his family and friends to visit him and the physical environment in which he will serve his sentence.

■ The information provided by the report of a trained probation officer, together with the evidence presented at the trial itself, give the sentencing judge the only reliable bases for exercise of his sentencing discretion. The sentencing decision, repeatedly referred to by trial judges as the most difficult they face,[3] certainly cannot be based on the visage of the defendant, and should not be founded only on his apparent contrition or lack of remorse or on his lawyer's eloquence at allocution. Therefore, if the judge imposes sentence without complying with rule 32, the sentence must be vacated; the probation service must make a presentence investigation and report to the judge; upon request, the defendant may be allowed to inspect it,[4] and then the judge must, after a new allocution,[5] impose a new sentence. *United States v. Dinapoli*, 519 F.2d 104, 107–08 (6th Cir. 1975); *see United States v. Chiantese*, 582 F.2d 974, 981 & n.17 (5th Cir. 1978), *cert. denied*, 441 U.S. 922, 99 S.Ct. 2030, 60 L.Ed.2d 395 (1979).

■ A presentence report is not required if the court finds "that there is in the record information sufficient to enable the meaningful exercise of the sentencing discretion, and the court explains this finding

on the record." Fed.R.Crim.P. 32(c)(1). The rule patently contemplates that this determination shall be made before sentence is imposed. *See United States v. Chiantese*, 582 F.2d at 981 & n.17. In this case the court made no such finding; however, when the deficiency was pointed out by the defendant in his motion for correction and change of sentence, the Assistant United States Attorney suggested a remedy to the judge:

> Thank you, Your Honor. For the record, if I understood the Court, the Court is finding that there is in the record information sufficient to enable you to make the meaningful exercise of sentencing discretion that you did, and you've explained that and it's now on the record, is that correct?

The judge responded:

> Well, I haven't seen the record since we tried that case, but you've refreshed my memory and I remember we tried that case a couple of days.

This response later was supplemented by a judgment stating:

> The Court finds that no useful purpose would be served by preparing a presentence report to be used as an aid to the Court in imposing sentence. This Court conducted the murder trial of this defendant, heard the evidence presented and observed defendant during the course of the trial. The Court at the time of sentencing and now has sufficient information available to meaningfully impose a proper sentence; that based upon that information, regardless of what may be produced by a presentence report, the Court would not designate an early parole eligibility as provided by 18 U.S.C. 4205(b) in this particular case.

Although the defendant had been convicted of first degree murder, he was, according to the representations made by defense counsel, a first offender, and a veter-

---

2. Who may, of course, choose to accept or reject the sentencing judge's recommendation. 18 U.S.C. § 4082(a); *United States v. Huss*, 520 F.2d 598, 608 (2d Cir. 1975).

3. *See, e. g.*, Hoffman, *Purposes and Philosophy of Sentencing*, 75 F.R.D. 287, 287 (1977); Mur-

rah, *Foreword* to *Papers Delivered at the Institute on Sentencing*, 42 F.R.D. 178 (1966).

4. Fed.R.Crim.P. 32(c)(3).

5. Fed.R.Crim.P. 32(a)(1).

an of the Vietnam War; and a military service record and numerous affidavits submitted on the defendant's behalf attested to his good character. Although the judge said at the outset of the hearing that he had not read but would later read these documents, he made his decision on the bench the same day without looking at them. His lack of memory of the case tried eighteen months before is shown by the excerpts from the record set forth in the appendix; so, too, is his prejudgment that he could meaningfully exercise the discretion given to him and that a presentence investigation could be of no assistance.

■ Although rule 32 requires that the presentence report be made prior to sentencing and contemplates that the decision to waive the presentence report must be made before sentencing, there may be times when the judge's failure to state in advance the reasons for not ordering the report might be harmless error. *See United States v. Chiantese*, 582 F.2d at 981 & n.17. When, however, eighteen months have elapsed since the time the decision should have been made, the sentencing judge fails even to consult the impartial, trained probation officer whose very appointment is largely for the purpose of assisting him,[6] and decides without even referring to the documents that might incline an impartial judge to clemency, we cannot condone the failure to comply with the rule.

Rule 32 denies any judge the discretion to reduce the hearing on sentence to a meaningless formality. "If this rule has any purposes, the supplying of facts and insights into both the background[s] and the potentialities (for good or evil) of young, felony first offenders must be among the most important." *United States v. Dinapoli*, 519 F.2d at 108. As the *Dinapoli* court then further observed: "Those who have studied the sentencing problem in depth are unanimous in recommending that presentence reports be secured in all felony cases, particularly those involving first offenders. NCCD Model Sentencing Act, Art. I, § 2 (1963); ALI Model Penal Code § 7.07(1)

(Prelim. Official Draft 1962); ABA Standards Relating to Sentencing Alternatives and Procedures § 4.1(b) (1968)." *Id.*; *see United States v. Frazier*, 479 F.2d 983, 986–87 (2d Cir. 1973); *United States v. Manuella*, 478 F.2d 440 (2d Cir. 1973). *But see United States v. Kane*, 450 F.2d 77, 83 (5th Cir. 1971), *cert. denied*, 405 U.S. 934, 92 S.Ct. 954, 30 L.Ed.2d 810 (1972); *United States v. Teague*, 445 F.2d 114, 121–22 (7th Cir. 1971); *Cassidy v. United States*, 428 F.2d 585, 588 (8th Cir. 1970); *King v. United States*, 410 F.2d 1127 (9th Cir. 1969) (per curiam).

Accordingly, we reverse the trial court's judgment denying the motion to vacate the sentence and set the sentence aside. We remand for the ordering of a presentence investigation and report, and resentencing of the defendant.

■ The trial judge who initially imposed the sentence has stated twice on the record that no presentence report could change his mind. He has foreclosed meaningful consideration of the report that he is required to receive and to weigh. He has demonstrated that he cannot make a decision in regard to this defendant with the impartiality required of all who sit in judgment. *See Johnson v. Mississippi*, 403 U.S. 212, 216, 91 S.Ct. 1778, 1780, 29 L.Ed.2d 423, 427 (1971) (per curiam) ("Trial before 'an unbiased judge' is essential to due process."); *Brown v. Vance*, 637 F.2d 272, 281 (5th Cir. 1981) ("[D]ue process guarantee[s] . . . a fair trial before an impartial judge . . . ."); ABA Code of Judicial Conduct, Canon 2(A) (1972) ("A judge should respect and comply with the law and should conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary."); *id.* Canon 3 (1972) ("A Judge Should Perform the Duties of His Office Impartially and Diligently"). He has left himself no room for the exercise of that discretion given to him by Congress. *Cf. United States v. Denson*, 603 F.2d 1143, 1148 (5th Cir. 1979) (en banc) ("While the sentencing judge has great discretion in imposing a sentence, that latitude is permis-

---

6. *See* 10 *Guide to Judiciary Policies and Procedures (Probation Manual)* § 2002 (1978); Jackson, *The Federal Probation System*, 75 F.R.D. 423, 423, 424 (1976); Parsons, *Aids in Sentencing*, 35 F.R.D. 423, 428–29 (1964).

sible only within the bounds set by statute."). Accordingly, without in any way impugning the integrity of the trial judge, we are constrained to order that the case on remand be allotted to another judge. *Calvaresi v. United States*, 348 U.S. 961, 75 S.Ct. 522, 99 L.Ed. 749 (1955) (per curiam); *United States v. Columbia Broadcasting Sys., Inc.*, 497 F.2d 107, 109–10 (5th Cir. 1974);[7] *see* 7th Cir. R. 18 (requiring that particular criminal cases be assigned to a new trial judge on remand); *cf. Phillips v. Joint Legislative Comm. on Performance & Expenditure Review*, 637 F.2d 1014, 1032 (5th Cir. 1981) (remanding case with specific instructions concerning hearing judge on remand, "in light of later developments and all the circumstances presented"). *See generally* 28 U.S.C. § 2106.[8]

Judgment REVERSED. The case is REMANDED for further proceedings consistent with this opinion.

### APPENDIX

MR. PEGRAM [counsel for defendant]: I have a memorandum prepared if Your Honor would like it in this case.

THE COURT: Need all I can get.

\*　\*　\*　\*　\*　\*

MR. PEGRAM: Yes, sir. The reason I'm down here is to request that the Court correct and reduce a sentence which was given to him at the end of his trial.

THE COURT: Who is that? What's that fellow's name?

MR. PEGRAM: The person I'm representing?

THE COURT: Yes.

MR. PEGRAM: James Long.

THE COURT: James Long?

MR. PEGRAM: Long, yes, sir.

THE COURT: What was he tried for?

MR. PEGRAM: He was tried for murder, Your Honor.

THE COURT: You think he ought to be given a chance to kill somebody else?

MR. PEGRAM: No, sir. Mr. Long is not the type of individual who kills people intentionally. At the end of the trial Your Honor asked how long would be needed for a pre-trial investigation. At that time [Assistant U.S. Attorney] Dan Lynn, who was associated with the trial, stated that this would not be necessary because the sentence was mandatory life and that Your Honor had no discretion in the matter, and with that the Court dispensed with the pre-sentence investigation and did impose a mandatory life sentence.

Now under Rule 35 of the Federal Rules of Criminal Procedure the Court has the discretion to review a sentence, and under Rule 32 of the same set of Federal Rules of Criminal Procedure it specifically states in paragraph (c)(1) that the probation service of the court shall make a pre-sentence investigation and report to the court before imposition of a sentence unless—there are two exceptions—with the permission of the court the defendant waives such a pre-sentence investigation, or if the court finds there is in the record information sufficient enough to enable the meaningful exercise of the sentence without such an investigation.

In this case Your Honor had asked for one and as I stated declined under advice from the U.S. attorney's office. Now this matter came up in a case entitled *United States v. Busic*, B-U-S-I-C, 592 F.2d 13, 1978 case involving highjackers.

THE COURT: Where do you live, Counsel?

---

**7.** *Accord, Leano v. United States*, 592 F.2d 557 (9th Cir. 1979) (per curiam); *United States v. Diamond*, 561 F.2d 557, 559 (4th Cir. 1977) (per curiam); *United States v. Robin*, 553 F.2d 8, 10–11 (2d Cir. 1977) (per curiam); *United States v. Bray*, 546 F.2d 851, 860 (10th Cir. 1976); *United States v. Yagid*, 528 F.2d 962, 965 (2d Cir. 1976); *Mawson v. United States*, 463 F.2d 29, 31 (1st Cir. 1972) (per curiam).

**8.** Section 2106 provides:

The Supreme Court or any other court of appellate jurisdiction may affirm, modify, vacate, set aside or reverse any judgment, decree, or order of a court lawfully brought before it for review, and may remand the cause and direct the entry of such appropriate judgment, decree, or order, or require such further proceedings to be had as may be just under the circumstances.

MR. PEGRAM: I live in Oxford, Mississippi.

THE COURT: Oxford?

MR. PEGRAM: Yes. In that case the sentence was again mandatory life because of a death involving a highjacker. The district court judge in that case imposed that sentence but used his discretion to reduce the time under which parole might be granted.

THE COURT: Was this case tried before a jury?

MR. PEGRAM: Yes, Your Honor, and the sentence was imposed. The circuit court—

THE COURT: It was tried where? See, I don't remember.

MR. PEGRAM: No, sir. This is a case—I didn't write down which circuit this was in. It's not in this circuit.

THE COURT: I'm talking about the case you're representing.

MR. PEGRAM: Oh, excuse me, Your Honor. Yes, sir, it was tried before a jury and it was tried in Jackson, Mississippi, I believe. Is that right?

MR. LYNN [Assistant U.S. Attorney Dan Lynn]: No, sir. This is the Long case that was tried on the Gulf Coast.

MR. PEGRAM: Excuse me. Gulf Coast.

MR. LYNN: This is the case, Your Honor, where the ex-airman went on Keesler Air Force Base where they were playing poker and shot—

THE COURT: Oh, yes, I remember that.

MR. LYNN: —the guy who his wife was then dating. You remember the occasion.

THE COURT: Sure do.

\*　　\*　　\*　　\*　　\*　　\*

THE COURT: Dan [Assistant U.S. Attorney Dan Lynn], you got an apology to make?

MR. LYNN: Well, Your Honor, I'm certainly moved by Counsel's devotion to his friend. But I also remember how the evidence showed that this man was friends with Fred Currie.

THE COURT: Who is Fred Currie?

MR. LYNN: The guy he shot and killed, Your Honor. The unfortunate incident that Counsel alludes to. Currie Fred Glen was the man's name he shot and killed.

\*　　\*　　\*　　\*　　\*　　\*

THE COURT: Well, you certainly make a very impressive appeal here. If I were a juror I would turn you loose. But I don't think that this is the place to try a criminal case, not in my hearing room over here in Jackson when we had this trial down in the Southern Division of the Southern District at Biloxi. A jury heard the same case I heard, and if I'd been sitting on the jury, frankly, I would have joined in that same judgment because like Mr. Lynn reminded me, this fellow shot his victim across a little round table—I don't know enough about gambling to know what kind of table it was—but it was a round table, and I reckon that table must have had a diameter of twelve or fifteen feet, and the victim fell out of a chair, was knocked out of the chair and went to the floor, and he held his gun right close to this fellow's body—I don't remember what part of his body, but he certainly made sure that he had killed him. There is no doubt in the world about that.

I don't think that we are called on to pass on such a momentous thing when the statute says he has ten years to serve a life sentence, and you're asking me to reduce it to eight years. I don't have the capacity to make that kind of decision. I seriously question the qualifications of Congress to reduce a life sentence to ten years. That's just arbitrary and capricious in and of itself. And for me to sit here and arbitrarily and capriciously reduce it to eight years, I just don't have that kind of ability.

\*　　\*　　\*　　\*　　\*　　\*

THE COURT: Counsel is here in all earnestness and all sincerity representing a friend and he's trying to do everything in the world he possibly can to help his friend, but I just wonder if we had some of the dead man's people here what they would say about this, but we don't have a one in this room. We just hear one side of it.

Well, I heard both sides of it down at Biloxi and I've just heard one side of it here. And I think that Congress has al-

ready given this man as much as he's entitled to, arbitrarily and capriciously, to say that a cold-blooded murderer shall serve only ten years. That's putting a pretty cheap score on a human life. To say that you can bodaciously walk out and take your gun and shoot a fellow out of his chair and then when he gets on the floor, get closer to him and be absolutely sure you have killed him, and then ask for mercy, which he didn't accord his victim.

I don't even know these people; have no idea who they were. I practiced at this bar for a long time before coming here, but as a civil lawyer. Didn't know anything about criminal law. But I know something about common, ordinary decency, and I don't do or say anything knowingly or intentionally to give anybody the impression that I have a real cheap appraisal of human life. These people were in a family feud of some kind. I don't know who was right or wrong. I never try to get at the bottom of stuff like that.

But I say this to you, Counsel: I don't think that the probation officer could put anything in a probationary report that would cause me to change my position or my attitude or my thinking or my feelings and conclusions about a case of this kind. You've made a real impressive jury argument, but I'm the sorriest juror that you ever looked at in your life. I believe you realize that. We didn't have a trial at Biloxi preliminarily. We had a sure enough trial. I don't have any idea how many witnesses Mr. Long had; don't know how many the government had. I payed no attention at all to that. Just try to give both of them a fair and impartial trial, and I think that Mr. Long got a fair and impartial trial under all the facts and under all the circumstances, regardless of his disappointment in the state court in another case. I don't think that enters into it at all. It didn't authorize him to do anything that he did on the day of this tragedy.

So I realize that I could straddle the fence, but I'm not a fence straddler. And I have no desire, in all sincerity, to request the probation department to make a report to me because I can't think of anything that they could put in their report which would

have the slightest influence on me. Counsel here has had some very delightful and very moving experiences with Mr. Long, but we're not trying him on that score at all. That has nothing whatsoever to do with this except to try to move your emotions into the place of the law. And a jury in Biloxi, properly called, properly instructed, hearing all of the evidence, they said he was guilty as charged with first degree murder, and my recollection, we said without capital punishment. That was stated in the instructions, without capital punishment.

So your motion, Counsel, with all deference to you, is overruled.

\* \* \* \* \* \*

MR. LYNN: Thank you, Your Honor. For the record, if I understand the Court, the Court is finding that there is in the record information sufficient to enable you to make the meaningful exercise of sentencing discretion that you did, and you've explained that and it's now on the record, is that correct?

THE COURT: Well, I haven't seen the record since we tried the case, of course, but you've refreshed my memory and I remember we tried that case a couple of days.

MR. LYNN: Yes, sir.

THE COURT: Down at Biloxi. And I don't think anybody, not even eloquent counsel here, could make me change my mind about that, with all deference to you, Counsel. You can tell Mr. Long that you certainly did a masterful job, but, you know, I'm just not easily moved when it comes down to a question of what's right and what's wrong and what's material and what's immaterial, because although I am never, have never been a criminal lawyer, that is a lawyer who handles criminal cases, to my experience, coming entirely from my experience on this federal bench. I think I handled one criminal case. I got into that in a wheel-deal, but I don't see any use in wishy-washying around and giving you some false hope by saddling onto the probation department the necessity for going forward with a probationary report which I don't require and I don't have any use for. I don't have any need for it. It wouldn't

help me the least bit in the world to see what I saw, and not what somebody told me I saw, but what I saw myself in the courtroom at Biloxi. Saw the whole tragedy enacted right before me, and saw Mr. Long. He handled himself real well in court, but he didn't convince me any more than he convinced the jury. The probation report would be completely useless and I do not intend or wish to put the department to that kind of trouble and expense with the implied feeling that their report would have some effect on me, which it would not.

That's all there is to it, Counsel.