Clifford COLE, Jr., Appellant,

v.

The STATE of Texas, Appellee.

No. 6-87-058-CR.

Court of Appeals of Texas,
Texarkana.

Aug. 30, 1988.

Clifton Holmes, Longview, for appellant.

Bonnie Leggat, Dist. Atty., Marshall, for appellee.

CORNELIUS, Chief Justice.

Clifford Cole, Jr. appeals his conviction and seventy-five year sentence for possession of cocaine. He contends he was denied due process and due course of law because the trial judge refused to consider the full range of punishment for the offense and predetermined his punishment without regard to the evidence after revoking his unadjudicated probation. We find no reversible error and affirm the judgment.

On May 11, 1987, Cole pleaded guilty to possession of more than 28 but less than 400 grams of cocaine. The trial court withheld judgment and placed Cole on deferred adjudication with ten years' probation and a $10,000.00 fine. At the time of entering the deferred adjudication, the trial judge stated:

THE COURT: Mr. Cole, I think your chances of success on probation are extremely slim, sir. Very, very slim. I am going to give you at this time an opportunity to withdraw your plea and go to the penitentiary today for a lot less years than you are going to get when I revoke your probation. You want to do that?

THE DEFENDANT: I can handle it.

THE COURT: You can handle it. Okay. All right, the Court withholds a finding of guilt in your case, Mr. Cole. And I am going to place you on probation under all the terms of the Probation Act of the State of Texas.

....

[THE COURT:] Now, I have written down on the docket sheet, Mr. Cole, how many years you are going to get if you come back in here. I am going to show it to you. Because if I am not sitting here and some other judge is, I want him to read it. And what it says is that you are to get 75 years, when you come back in here. Okay? *If you come back in here for any reason whatsoever, there won't be an opportunity to give me an excuse. You get the 75, okay. Not a minute less. Whether it be this Court or some other Judge. You get the 75.* Do you understand that? Do you have any questions about it?

THE DEFENDANT: No.

THE COURT: You are to disassociate yourself from persons of disreputable or harmful character. And that means every single friend that you have got right now, you have got to stay away from. Because you don't have any friends that aren't dopers. Okay? If the probation department tells me you are running with the same crowd, you get to do the 75? Okay? You understand me?

THE DEFENDANT: Yes, sir.

THE COURT: You have any questions about it?

THE DEFENDANT: No.

THE COURT: If you consume a controlled substance, do an (sic) cocaine, do any grass, you drink any liquor, then you do the 75. You understand me?

THE DEFENDANT: Yes, sir.

(Emphasis added.)

On June 22, 1987, Cole's probation officer and a Harrison County deputy sheriff obtained a urine sample from Cole which tested positive for cocaine. The State filed a motion to proceed to adjudication of guilt, and on July 26 a hearing on the motion was held before the same judge.

The court heard testimony from the officers, Cole's father, a drug counselor who had met with Cole, and a former college president who knew Cole. Cole's witnesses testified that Cole was a good worker, that his drug usage was an illness, that he could rehabilitate with the proper program, and

that a prison term would not be beneficial. The judge then accepted Cole's former guilty plea and sentenced him to seventy-five years in the Texas Department of Corrections. In doing so, the judge stated:

[W]hen a probationer makes a contract with this Court, the Court expects the probationer to follow through on it and the Court also expects the Court to follow through. If he told you certain things that would happen, then if they happen, the Court expects to *follow its own word.* (Emphasis added.)

Cole contends that the court's statements demonstrate that it had determined the sentence it would impose before hearing evidence and without regard to what the evidence would show. This, he contends, violated his Fifth and Fourteenth Amendment right to due process of law, and his right to due course of law guaranteed by Tex.Const. Art. I, § 19.

■ In Tex.Code Crim.Proc.Ann. art. 42.-12, § 3d(b) (Vernon Supp.1988), the procedures for unadjudicated probation, also known as deferred adjudication, are outlined:

After an adjudication of guilt, all proceedings, including assessment of punishment, pronouncement of sentence, granting of probation, and defendant's appeal continue as if the adjudication of guilt had not been deferred.

While this language does not guarantee the right to a separate punishment hearing, fairness requires that the defendant have the opportunity to offer appropriate mitigating evidence before the punishment is determined, either during the proceedings for revocation of probation and adjudication of guilt or afterwards upon request. *Duhart v. State,* 668 S.W.2d 384, 387 (Tex. Crim.App.1984).

■ It is a denial of due process for the court to arbitrarily refuse to consider the entire range of punishment for an offense or to refuse to consider the evidence and impose a predetermined punishment. *McClenan v. State,* 661 S.W.2d 108 (Tex. Crim.App.1983); *see also, United States v. Long,* 656 F.2d 1162 (5th Cir.1981); *Field-*

*ing v. State*, 719 S.W.2d 361 (Tex.App.–Dallas 1986, pet. ref'd).

Here, the judge's comments both when granting deferred adjudication and afterwards when assessing punishment can be construed as showing that he had determined the seventy-five year sentence prior to considering Cole's presentation of mitigating evidence. Nevertheless, we find that Cole waived any due process violation by failing to make any objection to the punishment or the judge's alleged failure to consider the evidence. Appellate courts will not consider any error which counsel could have called, but did not call, to the attention of the trial court at a time when such error could have been avoided or corrected. *Rogers v. State*, 640 S.W.2d 248 (Tex.Crim.App. [Panel Op.] 1982); *Esquivel v. State*, 595 S.W.2d 516 (Tex.Crim.App.), *cert. denied*, 449 U.S. 986, 101 S.Ct. 408, 66 L.Ed.2d 251 (1980). The rule applies to errors of constitutional dimension. *Rogers v. State*, supra; *Mendoza v. State*, 552 S.W.2d 444 (Tex.Crim.App.1977).

In this case, as in *Rogers*, neither Cole nor his attorney raised any objection to the punishment or to the procedures used by the trial judge, either at the initial granting of deferred adjudication or at the punishment hearing or sentencing. In fact, it can be inferred from the record that they acquiesced in them. Indeed, as in *Rogers*, the trial judge asked, "Any reason that defendant should not be sentenced at this time?" and Cole's counsel stated, "None, Your Honor." No complaint was made of the procedure or punishment until Cole's motion for new trial was filed, and that contained only a general allegation that Cole was denied due process in the sentencing procedure. *Fielding v. State*, supra, 719 S.W.2d at 367.

As stated by the court in *Fielding*, "If the trial judge committed errors sufficient to warrant a reversal on appeal, they deserved at the least an objection...." Cole's failure to object or call the error to the judge's attention waived any complaint.

The judgment is affirmed.

BLEIL, Justice, concurring.

I agree with the conclusion that Cole waived any complaint he may have had by failing to object to the sentencing procedure, and therefore concur with the Court's decision affirming the trial court's judgment. I choose to write separately to further address the question whether the trial court denied Cole his due process rights by announcing in advance what punishment would be assessed in the event of a revocation of the unadjudicated probation. We previously addressed this issue, presented to us as an alternative contention in *Pipkin v. State*, 750 S.W.2d 21 (Tex.App.–Texarkana 1988, no pet.). While we there candidly recognized that the particular announcement in that case was not an advisable procedure, we concluded that Pipkin failed to show, as he had alternatively alleged on appeal, a violation of his right to due process of law as guaranteed by the Texas Constitution, relying in part on *Fielding v. State*, 719 S.W.2d 361 (Tex. App.–Dallas 1986, pet. ref'd).

The *Fielding* case illustrates that appellate courts must make distinctions between instances of inadvisable comments on the part of the trial court and instances of a demonstrated refusal of the trial court to either hear evidence in mitigation of punishment or consider the full range of punishment. The majority and dissenting views in that case did not disagree on the law on that point but as to its application to the facts.

The majority correctly indicated that in the absence of a clear showing to the contrary the trial court's actions are presumed to be correct. *Id.*, at 366. The majority held that Fielding had failed to rebut the presumption of correct action as set forth in *Thompson v. State*, 641 S.W.2d 920 (Tex.Crim.App. [Panel Op.] 1982). By contrast, the dissenting justice in *Fielding* viewed the record as establishing that the trial court did not consider the full range of punishment. *Fielding v. State*, 719 S.W.2d at 370. There was no disagreement in *Fielding*, nor in the case now before us, about whether an arbitrary refusal by a trial court to consider the full range of

punishment can amount to a denial of due process: it clearly can.

GRANT, Justice, dissenting.

I agree with the majority opinion that the trial court's comments can be construed as demonstrating that the judge predetermined the defendant's sentence prior to hearing any evidence on punishment. Further, I believe this is the only construction that can be placed on these comments, and this practice violates the due process to which every defendant is entitled under the Texas Constitution and the United States Constitution.

The difficult question is whether the trial court's error was waived by the defendant. Chief Justice Guittard's opinion in *Fielding v. State*, 719 S.W.2d 361 (Tex.App.–Dallas 1986, pet. ref'd) (Guittard, C.J., dissenting), addresses a very similar fact situation and is very persuasive in many respects. Justice Guittard found that there had been no waiver. He defined waiver as "an intentional relinquishment or abandonment of a known right or privilege," citing *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938), and *Paprskar v. State*, 484 S.W.2d 731, 737 (Tex.Crim.App. 1972).

In reviewing criminal cases in which the appellate courts were faced with the question of waiver, it appears that failure to object generally equates to waiver. However, there are some limited exceptions to this general rule. In *Rabb v. State*, 730 S.W.2d 751 (Tex.Crim.App.1987), the Court of Criminal Appeals held that failing to object to the unconstitutionality of a statute did not waive the right to raise that point on appeal. Misjoinder of offenses is another situation in which the Court of Criminal Appeals did not require an objection at trial to preserve error. *Keimig v. State*, 753 S.W.2d 400 (Tex.Crim.App.,1988) (not yet reported); *Holcomb v. State*, 745 S.W.2d 903 (Tex.Crim.App.1988); *Fortune*

*v. State*, 745 S.W.2d 364 (Tex.Crim.App. 1988).

Tex.R.App.P. 52(a) (made applicable to criminal cases on June 1, 1987) sets forth the requirements for preserving a complaint for appellate review. This rule provides no exception to the requirement of an objection to preserve error. However, in the recent decision of *Williams v. State*, No. 69,582 (Tex.Crim.App., June 22, 1988) (not yet reported), the Court of Criminal Appeals requires an objection for the purposes of preserving an error in a case "where the implication of the new constitutional right could have been reasonably anticipated." This is stated another way in *Reed v. Ross*, 468 U.S. 1, 104 S.Ct. 2901, 82 L.Ed.2d 1 (1984), in which the United States Supreme Court states that "where a constitutional claim is so novel that its legal basis is not reasonably available to counsel, a defendant has cause for his failure to raise the claim in accordance with applicable state procedures."

A claim to entitlement to due process certainly cannot be said to be novel, nor can it be said that it is a new constitutional right which could not have been reasonably anticipated. Nevertheless, the setting in which this denial occurred is not an area of law that has received significant attention. The *Fielding* case and a federal case that arose in Mississippi, *United States v. Long*, 656 F.2d 1162 (5th Cir.1981),[1] are two cases that are similar in nature to the present case, but no parallel cases have been cited to us from the Court of Criminal Appeals or the United States Supreme Court. The recent case of *Norton v. State*, 755 S.W.2d 522 (Tex.App.–Houston [1st Dist.] 1988, n.p.h.), is the first case I have found in which an appellate court found a violation of due process for the failure of the trial judge to recuse because of the judge's pretrial statement on punishment.

In the present case, I would hold that Cole had not waived his basic right of

---

1. In the *Long* case, the trial judge stated twice on the record that no presentence report could change his mind, thus closing his mind to a factor that the law required him to consider. The appellate court reversed the trial court on the basis that consideration of the presentence report was mandatory. The opinion does not indicate that any objection was made at the trial level.

constitutional due process. Waiver will not be lightly inferred and courts will indulge every reasonable presumption against waiver of fundamental constitutional rights. *Parker v. State,* 545 S.W.2d 151 (Tex.Crim.App.1977). While it is understandable that a judge may wish to impress the offender with the serious possible consequences of any violation of the conditions of his probation, he must do so in a manner not to prejudge the ultimate sentence before hearing the evidence on punishment. I would reverse the judgment insofar as it sets his punishment and would remand the case to the trial court with an instruction (as Judge Guittard sets forth as the appropriate action in *Fielding, supra*) to conduct a punishment hearing before a different judge.