In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-01-00089-CR


______________________________




NONA DIANA ELLINGTON, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 124th Judicial District Court


Gregg County, Texas


Trial Court No. 28077-B




 




Before Cornelius, C.J., Grant and Ross, JJ.


Opinion by Justice Ross



O P I N I O N



 Nona Ellington pled guilty to felony theft and received a two-year state jail sentence,
probated for four years. The court revoked her community supervision, and she was
sentenced to serve two years in a state jail. Ellington appeals, complaining that the trial
court erred in failing to consider the full range of punishment options available at her
revocation hearing.

 The State's original application to revoke Ellington's community supervision was
based on her alleged failure to abstain from the use of marihuana and amphetamines. The
State amended the application, adding an additional allegation of use of amphetamines. 
At the hearing on the State's motion, Ellington pled true to the allegations and asked the
court to continue her community supervision. The court revoked community supervision,
imposing the original two years' confinement in a state jail. 

 Ellington contends reversal is required because the judge's remarks at the hearing
indicate he wholly failed to consider the statutory options available for punishment and
demonstrate a commitment to a predetermined outcome. The remarks, in context, are as
follows:

 [DEFENSE ATTORNEY]: Your Honor, you've heard the evidence. 
She's asking for a second chance. And if the Court can, she'll understand. 
If the Court can't, we're asking for whatever the Court can do.


 THE COURT: A second chance? Go ahead.


 [PROSECUTOR]: Well, Your Honor, I was just going to point out to
the Court that from the time that she left this Courtroom and received
probation from Your Honor, it was fifty-four days before she was smoking
marijuana. And I think the Court can take into consideration her testimony
about what type of amphetamines these are.


 THE COURT: A second chance indeed. A second chance to go
out and violate the rules of probation, to flaunt the authority of this Court, to
thumb your nose at this Court's orders? Huh-uh. Not this Judge. I revoke
your probation, and I assess your punishment at two calendar years [sic]
confinement in a state jail facility, day for day, with credit for time served. 
Any reason in law the sentence should not be formally pronounced?


 [DEFENSE ATTORNEY]: No, sir.


 Ellington contends that the trial judge refused to consider the full range of
punishment options available, specifically, the option of continuing her community
supervision, and that such failure violated Ellington's right to due process. This contention
is based on authority holding that an arbitrary refusal to consider the entire range of
punishment constitutes a denial of due process. See McClenan v. State, 661 S.W.2d 108,
110 (Tex. Crim. App. 1983); see also Hull v. State, 29 S.W.3d 602, 604-05 (Tex.
App.-Houston [1st Dist.] 2000, pet. granted); Earley v. State, 855 S.W.2d 260, 262-63
(Tex. App.-Corpus Christi 1993), pet. dism'd, improvidently granted, 872 S.W.2d 758 (Tex.
Crim. App. 1994); Howard v. State, 830 S.W.2d 785, 787-88 (Tex. App.-San Antonio
1992, pet. ref'd); Jefferson v. State, 803 S.W.2d 470, 471-72 (Tex. App.-Dallas 1991, pet.
ref'd) (all holding remarks indicating judge was delivering promised outcome showed lack
of impartial consideration of both relevant evidence and statutory sentencing options);
Fielding v. State, 719 S.W.2d 361, 368 (Tex. App.-Dallas 1986, pet. ref'd) (Guittard, C.J.,
dissenting). 

 The initial question is whether the issue has been preserved for appellate review.
This Court reviewed a similar situation in Cole v. State, 757 S.W.2d 864 (Tex.
App.-Texarkana 1988, pet. ref'd). (1) In that case, the defendant claimed the trial judge
prejudged his sentence and failed to consider mitigating evidence. We noted the
defendant had been given the opportunity to object, but failed to raise any objection to the
punishment or the procedures followed, either at the initial granting of deferred adjudication
or at the punishment hearing or sentencing. We held that error was waived for failure to
voice an objection to the imposition of punishment or to the trial judge's alleged failure to
consider the evidence. Id. at 865-66 (trial judge wrote on docket sheet defendant would
receive seventy-five years' imprisonment if he violated terms of deferred adjudication); see
also McClenan, 661 S.W.2d at 110. Appellate courts do not consider any error counsel
could, but did not, call to the trial judge's attention when the trial judge could have avoided
or corrected the error. Cole, 757 S.W.2d at 866.

 The Dallas Court of Appeals has since agreed with our reasoning in a factually
similar case, likewise concluding that, because there was no objection made to the
procedure or the punishment, the claim of error had been waived. Cole v. State, 931
S.W.2d 578, 580 (Tex. App.-Dallas 1995, pet. ref'd).

 There are cases in which appellate courts have concluded waiver was inapplicable,
but they involved situations where no punishment hearing was conducted, and thus the
defendant had no real opportunity to object. (2) That is not our situation. In this case,
Ellington failed to object to the judge's comments at the sentencing phase of her revocation
hearing or to the imposition by the court of the two years' confinement when there was a
clear opportunity to do so. A full revocation hearing was conducted in which Ellington pled
true to violations of her community supervision and testified on her own behalf. There is
no indication in the record the judge had predetermined that if Ellington violated her
community supervision he planned on imposing the maximum sentence. In the absence
of a clear showing to the contrary, we are to presume the trial judge was a neutral and
detached officer. Earley, 855 S.W.2d at 262.

 In light of these facts, we conclude the claim of error was not preserved for appellate
review. Even if it had been, the record does not show the trial judge had predetermined
the sentence in this case. The sentence Ellington received was the punishment originally
assessed when she was placed on community supervision. The contention of error is
overruled.

 We affirm the judgment.


 Donald R. Ross

 Justice


Date Submitted: December 12, 2001

Date Decided: December 21, 2001


Do Not Publish


1. Chief Justice Cornelius wrote the opinion, Justice Bleil concurred, and Justice
Grant dissented.
2. In Watson v. State, 884 S.W.2d 836, 838-39 (Tex. App.-El Paso 1994), rev'd on
other grounds, 924 S.W.2d 711 (Tex. Crim. App. 1996), the court distinguished its case
because the defendant had no opportunity to object before sentence was pronounced. It
noted that, although due process claims may be preserved in a motion for new trial, it is
not necessary to raise a point in a motion for new trial in order to preserve the claim for
review on appeal.

 The Dallas court, in Jefferson v. State, 803 S.W.2d 470, 472 (Tex. App.-Dallas
1991, pet. ref'd), concluded that the appellant had no reason to request relief (recusal of
the trial judge) until after the judge had assessed punishment. The court concluded the
appellant did not knowingly waive the right to a fair and unbiased tribunal. The court also
pointed out that, until the judge assesses punishment, the defendant is entitled to assume
the judge will perform his or her solemn duty to assess punishment on consideration of
relevant evidence. Id. The court also stated that once the judge assesses punishment
based on factors such as his or her promised punishment period, any recusal motion or
objection would be futile. Id.

 The San Antonio court reviewed a similar situation, concluding there was no
indication the appellant had knowingly waived his right to a fair and impartial forum and
stating the record did not disclose that a lesser sentence than ninety-nine years was ever
considered. Howard v. State, 830 S.W.2d 785, 788-89 (Tex. App.-San Antonio 1992, pet.
ref'd).


Sufficiency of the Evidence

 Brown attacks the sufficiency of the evidence from a number of directions. He points to
evidence that would undermine the evidence that after receiving notice to depart, he "failed to do so."

 1. Left after a short period of time

 Brown maintains that "it took a few minutes before he actually left the property." "He may
not have left the property the first instance he was asked to leave but ultimately he did leave after a
very short period of time." Brown fails to acknowledge that during that "very short period of time,"
he entered Walker's truck, took out Walker's gun, threatened Walker, screamed at the Walkers, and
cursed the Walkers and their family. Brown was very active in this "very short period of time."

 We point out that this is not a matter of Brown being directed to leave the property and it
taking Brown some amount of time to physically leave the property. That is, we are not considering
the time it took for Brown to initiate and complete his departure from the Walker property. We can
foresee instances where that might take some amount of time, depending on the distance one must
go to effect his departure or the means by which one must effect his departure. Such is not the case
here.

 Brown's contention is somewhat similar as that urged by the appellant in Cole v. State, Nos.
14-03-00083-CR, 14-03-00084-CR, 2004 Tex. App. LEXIS 2250 (Tex. App.--Houston [14th Dist.]
Mar. 11, 2004, pets. ref'd [2 pets.]) (mem. op., not designated for publication). Cole contended that
the evidence was legally and factually insufficient to prove she failed to leave a stadium after she
was instructed to do so. Id. at *5. She claimed that because she was walking down a ramp, which
was a route that could have been used to leave the stadium, the State failed to prove that she failed
to depart when asked to do so. Id. The Houston Fourteenth Court pointed out, however, that Cole's
supervisor had asked Cole to leave approximately ten times before the supervisor went to get the
police officer working as stadium security and that Cole failed to leave. Id.

 That Brown ultimately made the decision to leave, seemingly upon learning that the sheriff's
department was on its way, does not diminish the evidence that he failed to depart in a reasonable
time following his repeated warnings to do so. The law does not allow a person to remain, after
notice has been given, to finish saying or doing what the actor chooses to say or do, and leisurely
depart on his or her own terms or when the urge to do so strikes. We recognize that the time from
issuance of notice to a full and complete departure cannot be instantaneous; the laws of physics
require that it will necessarily take some amount of time for the person to comply with the
instruction to leave. Here, however, it is not a close call. Brown lingered long enough to continue
his ranting and threatening behavior and to get into Walker's truck, get the gun, and return the gun
upon reconsideration of that idea. Under the circumstances, the delay between the repeated notices
to depart and Brown's decision to finally do so is unreasonable.

 2. No verbal refusal to depart

 Brown also points out that he never verbally refused to leave the property. Based on the
evidence that Brown physically remained on the property after having been instructed to leave and
chose to remain while screaming, cursing, burglarizing a vehicle, and waving a gun, the jury was
permitted to infer that Brown refused to leave the property. No words to that effect were necessary;
it is clear from Brown's conduct that he chose to not leave the property. We add that Section 30.05
of the Texas Penal Code does not require that the actor verbally express a refusal to leave the
property after being instructed to do so. The absence of a verbal refusal to leave the property does
not render the evidence legally or factually insufficient.

 3. Left on his own volition

 Brown challenges the evidence that would show that he failed to depart after receiving notice
to do so because the evidence shows that he did, in fact, leave the property and did so under his own
volition. In other words, since he did not have to be forcibly removed from the Walkers' property,
he contends that there is no evidence that he failed to depart the property after having been directed
to do so. Section 30.05 also does not require than the actor be forcibly removed in order to constitute
an offense. Brown's delayed decision to leave came only after repeated instructions to do so, a great
deal of confrontation, the commission of another criminal offense, and an unreasonable amount of
time. The fact that he did leave under his own power is of no consequence. Evidence that Brown
left before law enforcement authorities arrived does not mean that the State failed to present legally
or factually sufficient evidence that Brown failed to leave after receiving notice to do so.

IV. CONCLUSION

 The record is clear that Brown was told to leave and failed to do so. In fact, he admits that
he was twice told to leave and did not do so. Along with Walker's testimony that he told Brown to
leave at least three times and Wanda's testimony that she, too, directed Brown to leave the premises,
Brown's own admissions that he remained on the property after being instructed to depart constitute
legally sufficienct evidence that he failed to depart. The record shows that notice was given and
received and, as shown by Brown's remaining on the property, ignored or disregarded.

 The jury had before it legally sufficient evidence to permit the jury to infer from Brown's
words and actions that Brown failed to depart after having been directed several times to do so. The
cumulative force of the evidence supports the jury's verdict when viewed in a light most favorable
to that verdict. We conclude that legally sufficient evidence supports the jury's findings as to the
failure element of criminal trespass.

 After reviewing the evidence, we cannot say that the evidence that Brown failed to depart
within the meaning of Section 30.05(a) is so weak as to be clearly wrong and manifestly unjust. Nor
can we conclude that the jury's finding on this element is against the great weight and preponderance
of the available evidence. We conclude that factually sufficient evidence supports the jury's
determination and overrule Brown's point of error to the contrary.

 Having concluded that legally and factually sufficient evidence supports the jury's verdict,
we overrule Brown's points of error and affirm the judgment of the trial court.




 Bailey C. Moseley

 Justice


Date Submitted: June 25, 2009

Date Decided: July 31, 2009


Do Not Publish

1. This case is a companion case to Brown v. State, cause number 06-09-00017-CR in which
Chief Justice Morriss reviewed the legal and factual sufficiency of the evidence to support Brown's
conviction for burglary of a vehicle. We affirmed that conviction. A more detailed account of the
facts is presented in that lead opinion. Originally appealed to the Twelfth Court of Appeals, this case
was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. 
See Tex. Gov't Code Ann. § 73.001 (Vernon 2005). We are unaware of any conflict between
precedent of the Twelfth Court of Appeals and that of this Court on any relevant issue. See Tex. R.
App. P. 41.3.
2. As Robert Walker played a more central role in this matter than his wife, Wanda Walker,
this opinion will refer to him as Walker. We will refer to Wanda Walker as Wanda.
3. As Walker called community security and the sheriff's department, Wanda remained at the
long window and watched Brown stand by his vehicle with the gun up for a while and then walk
toward Walker's truck. When Walker came back from making telephone calls, she told him that she
thought Brown had returned the gun to the truck, although she did not clearly see him do so because
her vision was obstructed by the angle of the house.