ACCEPTED
01-14-00506-CR
FIRST COURT OF APPEALS
HOUSTON, TEXAS
1/19/2015 12:00:00 AM
CHRISTOPHER PRINE
CLERK

**No. 01-14-00506-CR**

In the
**COURT OF APPEALS**
For the
**FIRST SUPREME JUDICIAL DISTRICT**
at Houston

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
1/18/2015 11:57:12 AM
VOID K
CHRISTOPHER A. PRINE
Clerk

_____

On Appeal from the 240th Judicial District Court of
Fort Bend County, Texas
Cause Number 12-DCR-059402

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
1/20/2015 11:49:00 AM
CHRISTOPHER A. PRINE
Clerk

_____

**DANIEL DESANTIAGO-CARRAZA, Appellant**
_v._
**THE STATE OF TEXAS, Appellee**

_____

**APPELLANT'S BRIEF**

_____

_Counsel for Appellant_
_Daniel DeSantiago-Carraza_

**MICHAEL W. ELLIOTT**
ATTORNEY AT LAW
STATE BAR NUMBER 06546540
905 Front Street
Richmond, Texas 77469
(832) 496-5000
(281) 238-3141 (Fax)
Mike@Elliottslaw.com

**ORAL ARGUMENT REQUESTED**

# IDENTIFICATION OF PARTIES

Pursuant to Texas Rule of Appellate Procedure 38.1, a complete list of the names of all interested parties is provided below so the members of this Honorable Court may at once determine whether they are disqualified to serve or should recuse themselves from participating in the decision of this case.

**Appellant:**

Daniel DeSantiago-Carraza

**Counsel for Appellant**:

Don Hecker (at trial)
200 Hwy. 90-A, #B
Richmond, Texas 77461

Michael W. Elliott (on appeal)
905 Front Street
Richmond, Texas 77469

**Counsel for Appellee, The State of Texas:**

John Healey
Fort Bend County District Attorney
Tyra McCollum (at trial)
Loretta Owen (at trial)
Stuti Patel (at trial)
John Harrity (on appeal)
Assistant District Attorneys
310 Jackson Street
Richmond, Texas 77469

**Trial Court Judge:**

The Honorable Thomas R. Culver, III
The Honorable Daniel Sklar
The Honorable Lee Duggan, Jr.

# TABLE OF CONTENTS

IDENTIFICATION OF PARTIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

INDEX OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .iv

STATEMENT REGARDING ORAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . vii

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

ISSUES PRESENTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

ARGUMENT & AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    I.    Appellant suffered a Due Process Violation when the trial court refused to consider the entire range of punishment and refused to consider relevant evidence that mitigated Appellant's punishment.

PRAYER FOR RELIEF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

CERTIFICATE OF WORD COUNT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

# INDEX OF AUTHORITIES

## CASES

*Cole v. State*, 757 S.W.2d 864 (Tex. App.--Texarkana 1988). . . . . . . . . . . . . . .8, 13

*Howard v. State*, 830 S.W.2d 785 (Tex. App.--San Antonio 1992). . . . . . . . . . 8, 13

*Jefferson v. State*, 803 S.W.2d 470 (Tex. App.--Dallas 1991). . . . . . . . . . . . . . 8, 13

*McClenan v. State*, 661 S.W.2d 108 (Tex. Crim. App. 1983). . . . . . . . . . . . . . .8, 13

## STATUTES AND RULES

TEX. R. APP. 38.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

TEX. R. APP. 39.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to Texas Rule of Appellate Procedure 39.1, Appellant requests oral argument in this case.

**No. 01-14-00506-CR**

In the
**COURT OF APPEALS**
For the
**FIRST SUPREME JUDICIAL DISTRICT**
at Houston

_____

On Appeal from the 240th Judicial District Court of
Fort Bend County, Texas
Cause Number 12-DCR-059402

_____

**DANIEL DESANTIAGO CARRAZA, Appellant**
*v.*
**THE STATE OF TEXAS, Appellee**

_____

**APPELLANT'S BRIEF**
_____


## STATEMENT OF THE CASE

On March 26, 2012, Appellant was indicted for the felony offense of aggravated robbery. (CR: 13). On December 9, 2013, Appellant entered into a plea agreement in which he pleaded guilty to the offense alleged in the indictment and pled "open" to the trial court for punishment after a pre-sentence investigation was conducted. (CR: 60-64). After a hearing, on May 29, 2014, the trial court assessed Appellant's punishment at confinement in the Texas Department of Criminal Justice-Institutional Corrections Division for sixty years. (CR: 178-79).

1

Appellant timely filed Notice of Appeal on June 18, 2014. (CR: 182). This appeal results.

## STATEMENT OF FACTS

At Appellant's punishment hearing, James Thompson with the Rosenberg Police Department testified that on January 18, 2012, he responded to a call of a burning vehicle at approximately 3:30 a.m. (RR1: 10-11). When he arrived, he assisted with security and then heard gunshots nearby. (RR1: 12). Thompson then observed a gray Ford F150 pickup truck leaving the location. (RR1: 13). Thompson followed the vehicle until it stopped in front of Appellant's stepfather's home. (RR1: 15). Thompson initiated a traffic stop and spoke with the driver, Appellant, who was compliant. (RR1: 20). Thompson ordered the passenger out of the vehicle and commanded Appellant and the passenger to lie face-down on the ground. (RR1: 24-26). Appellant then asked Thompson to shoot and kill him (Appellant). (RR1: 27, 39). Specifically, Appellant said he did not care about dying and asked Thompson "to blast him." (RR1: 34). At one point, the passenger got up and fled. (RR1: 26). Because he had a "second subject now to deal with," Thompson shot Appellant with his taser gun. (RR1: 36). On cross-examination, Thompson acknowledged that he never found a weapon on Appellant and that the passenger was the one who had previously fired shots near

2

the location of the burning vehicle.    (RR1: 40).

Nelson Escobar testified that in the early morning hours of January 19, 2012, he was working for an Academy retail store and was cleaning the parking lot. (RR1: 47).    An F150 pickup truck pulled up next to him and the passenger pointed a gun at him and demanded money.    (RR1: 48-49).    Escobar did not give the passenger money but handed over his car keys.    (RR1: 49).    Escobar said the driver was giving orders, telling the passenger to "shoot him. Shoot him."    (RR1: 50).    The passenger shot at Escobar three or four times, but Escobar did not get hit.    (RR1: 51).    On cross-examination, Escobar admitted that he never saw the passenger and that his interaction was only with the passenger.    (RR1: 54-55).

Masario Garcia testified that at 3:00 a.m. on January 19, 2012, he was on his way to work and stopped at an intersection in the Richmond/Rosenberg area. (RR1: 57-58).    A Ford F150 was also approaching the intersection when Garcia saw the passenger get out of the vehicle.    (RR1: 60).    Garcia saw the passenger had a gun so Garcia sped off.    (RR1: 60).    The passenger then shot at Garcia's vehicle.    (RR1: 60).    Garcia called 911 and the pickup truck started following him.    (RR1: 62).    The truck passed him again and the passenger fired two or three more shots.    (RR1: 63).

3

Kevin Montfort of the Rosenberg Police Department testified that he took a statement from Appellant in which Appellant acknowledged his involvement in the events of the early morning hours of January 19, 2012. (RR1: 80). Appellant indicated that the passenger, Damion Gentry, stated that he wanted to scare Escobar. (RR1: 81). Appellant also explained that while he participated in setting fire to a vehicle on January 19, 2012, his understanding was that the vehicle belonged to Gentry. (RR1: 84). Monfort stated that Appellant was under the influence of Xanax at the time the offenses in this case occurred and that Appellant was distraught due to the recent death of a "very close dear friend." (RR1: 93). On cross-examination, Monfort stated that he did not interview Appellant until twelve hours after his arrest because Appellant was clearly impaired. (RR1: 103-04). Monfort agreed that Appellant was under the influence of both Xanax and alcohol on the night of the offenses. (RR1: 104). In fact, Appellant had been drinking for several days since the death of his friend on January 16, 2012. (RR1: 104). Montford related that Appellant told him he blamed himself for his friend's death and that he wanted the police officer to kill him because he could not stand what happened to his friend. (RR1: 105).

Brandi Echols, the pre-sentence investigation writer, testified that she interviewed Appellant regarding the offenses that occurred on January 18, 2012,

4

and January 19, 2012, but he could not recall the events of those dates because he was under the influence of Xanax, marijuana, and alcohol on those dates. (RR2: 12-13). Echols also reviewed Appellant's mental health history including records from the Texana Mental Health Mental Retardation Center which reflected that Appellant had been diagnosed with antisocial personality disorder, bipolar disorder, and intermittent explosive disorder. (RR2: 18). In addition, Appellant had attempted suicide and had behavioral, emotional, and social issues all through his childhood. (RR2: 19).

Will Trevino testified that he is Appellant's stepfather and was also a youth minister for Power and Faith Worship Center. (RR2: 33). Trevino testified that Appellant's father walked out on him when Appellant was a year and a half old. (RR2: 33). Appellant was a special education student because he was classified as a slow learner. (RR2: 34). Appellant's first stepfather was very abusive which let to a sad and depressing childhood. (RR2: 34). In fact, Appellant attempted suicide at the age of eleven because of his stepfather's abuse. (RR2: 35). After his suicide attempt, Appellant was sent to a center for three years. (RR2: 35). Despite his behavioral problems, Appellant was very respectful to his mother and Junior. (RR2: 37). Trevino explained that Appellant has two small daughters who miss their father very much. (RR2: 40). In addition, Trevino has

5

spoken with Appellant many times and Appellant is very remorseful for his conduct. (RR2: 40). Prior to these offenses, Appellant had only been convicted of one misdemeanor offense for possession of marijuana. (RR2: 41). Trevino informed the Court that on January 16, 2012, Appellant's friend Edgar Franco was killed in a car accident and that afterward, Appellant fell into a deep depression which led to excessive alcohol consumption. (RR2: 42). Trevino related that since January 19, 2012, Appellant has changed and has begun reading the bible. (RR2: 43-44). Appellant has expressed a great desire to work, care for his children, and work on his mental health and addiction issues. (RR2: 44).

Appellant testified that his daughters are two and five years old. (RR2: 76-77). Appellant informed the Court that he had never before been convicted of a felony and his only criminal history was a misdemeanor conviction for possession of marijuana. (RR2: 77). Appellant related that he had emotional problems during his childhood because of his abusive stepfather and that he had learning difficulties as well. (RR2: 78). The abuse led to his suicide attempt at commitment at the Dubnoff Center. (RR2: 79). After his release from the Center, Appellant began using drugs, which he mixed with his prescription medications. (RR2: 82). Appellant related that Franco was like a younger brother to him and January 16, 2012, was Franco's birthday. (RR2: 83). When

it got late, Appellant suggested Franco go home and he left. (RR2: 83). Franco was killed on the way home. (RR2: 83). Appellant began drinking heavily after Franco's funeral. (RR2: 84). He also smoked marijuana and ingested Xanax. (RR2: 84). Appellant informed the Court that he does not remember anything from January 19, 2012, but that he feels "bad" that people were hurt. (RR2: 86, 90). Appellant stated that had he been in his "right state of mind," the events of January 19, 2012 would not have happened. (RR2: 90). Since being incarcerated, Appellant formed a relationship with God and began reading the bible. (RR2: 87). Appellant also began planning for his and his daughters' futures. (RR2: 87). Specifically, Appellant had job prospects, a place to live, and a supportive family to help him. (RR2: 88).

## ISSUES PRESENTED

1. Appellant suffered a Due Process Violation when the trial court refused to consider the entire range of punishment and refused to consider relevant evidence that mitigated Appellant's punishment.

## SUMMARY OF THE ARGUMENT

Appellant's Appellant suffered a Due Process Violation when the trial court refused to consider the entire range of punishment and refused to consider relevant evidence that mitigated Appellant's punishment.

7

## ARGUMENT & AUTHORITIES

**I.**   *Appellant suffered a Due Process Violation when the trial court refused to consider the entire range of punishment and refused to consider relevant evidence that mitigated Appellant's punishment.*

Appellant suffered a Due Process violation when the trial court expressed its opinion that it did not need to hear evidence regarding the offenses in this case. The Court made this statement after hearing from only one witness and before Appellant had a chance to present mitigating evidence, including overwhelming evidence that Appellant did not remember the events in question and acted largely as a party. The Court also refused to consider evidence of Appellant's mental health history, his abusive childhood, and the recent death of a very close friend which affected his mental state prior to the commission of the offenses.

Due process requires a neutral and detached hearing body or officer. *Gagnon v. Scarpelli*, 411 U.S. 778, 786 (1973). "It is a denial of due process for the court to arbitrarily refuse to consider the entire range of punishment for an offense or to refuse to consider the evidence and impose a predetermined punishment." *Howard v. State*, 830 S.W.2d 785, 787 (Tex. App.--San Antonio 1992), *citing Jefferson v. State*, 803 S.W.2d 470, 471 (Tex. App.--Dallas 1991); *Cole v. State*, 757 S.W.2d 864, 865 (Tex. App.--Texarkana 1988); *McClenan v. State*, 661 S.W.2d 108, 110 (Tex. Crim. App. 1983). Absent a clear showing of bias, a trial

court's actions will be presumed to have been correct. *Thompson v. State*, 641 S.W.2d 920, 921 (Tex. Crim. App. 1982).

After the first witness testified, the judge expressed concern over the amount of testimony he was going to hear. (RR1: 40-41). The following exchange occurred:

THE COURT: "I'm not going to spend an hour repeating all the testimony that was heard in the earlier case.

THE PROSECUTOR: Judge, that's not the intent. But as I said earlier, we do have to establish a record should Mr. Desantiago-Caraza choose to appeal --

THE COURT: Well, here's the -- have we executed plea papers?

THE PROSECUTOR: He has, Judge, as to the guilt/innocence.

THE COURT: Okay.

THE PROSECUTOR: I guess what I'm saying, Judge, I think that certainly if there is other evidence that supports this defendant's involvement, and I

9

think what -- and Mr. Hecker can stop me if I'm wrong, which is I believe that certainly while he has pled and in that regard the State of Texas doesn't distinguish readily between parties and principles. I believe that that's a very significant core of events.

THE COURT: I just -- my real concern is should Mr. Hecker present and examine the witnesses. I presume he wants to refute some of what's in the PSI report.

THE PROSECUTOR: He might, Judge, but the burden still rests upon the State.

THE COURT: Has the State met its burden by – by the -- are you satisfied that you've got accurate, adequate plea papers that were drawn in these matters?

THE PROSECUTOR: Yes, we are satisfied with those. Yes, sir, we are.

THE COURT: So what more do you need?   (RR1: 41-42).

10

THE PROSECUTOR: But we certainly want to have enough to show if they raise --if they're raising, which I believe that they will, that he's jut a party, that his involvement is minimal, and, therefore, we think that he should get a lenient sentence, I think that we would be entitled to offer evidence that shows that his participation was more than just minimal. (RR1: 44).

THE COURT: Okay. How many witnesses are we going to have?

THE PROSECUTOR: Judge, I could probably cut out two more. So I would say seven or eight.

THE COURT: So you're going to have eight hours worth of testimony to back up a guilty plea?

THE PROSECUTOR: No, Judge.

THE COURT: You've killed an hour already.

(RR1: 44).

11

In this case, the trial court indicated it was not interested in any of the facts of the case to determine Appellant's punishment. In addition, the Court, before even hearing mitigation evidence from Appellant, indicated it needed nothing else to consider the punishment in this case. In fact, after the Court heard mitigating evidence, including evidence that Appellant did not remember the events that occurred during the commission of the offense, his mental health history, his abusive childhood, the recent death of a very close friend that affected his mental state, and that he acted only as a party, the Court assessed the maximum sentence. The Court also failed to consider that Appellant is the father of two children and has a supportive family and job waiting for him.

Even the prosecutor picked up on the trial court's unwillingness to hear the evidence in this case before determining punishment, and her foreshadowing that an unfairly harsh sentence was about to be imposed; when she had to point out to the Court that although Appellant had pleaded guilty, she was trying to build a record in the event Appellant argued that his sentence should have been more lenient because he only acted as a party. In fact, the prosecutor only asked for a sentence of fifty years, but the Court imposed a sentence of sixty years in this case, and a maximum sentence in Appellant's companion cases. Ironically, it appears that the Court pre-determined its sentence before listening to either the State or

12

Appellant.

It is implausible to believe that the trial court would assess a sentence of sixty years when Appellant had no felony criminal history and expressed true remorse for his participation in the alleged offense. This is especially true considering Appellant suffered an abusive childhood, does not remember the events of the night in question, and acted only as a party. Clearly, the State pre-determined Appellant's punishment and failed to consider any mitigating evidence. This is a well-settled violation of Appellant's due process rights. *See Howard*, 830 S.W.2d at 787; *Jefferson*, 803 S.W.2d at 471; *Cole*, 757 S.W.2d at 865; *McClenan*, 661 S.W.2d at 110. Accordingly, Appellant's point of error should be sustained and his sentence should be reversed.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Appellant respectfully prays that this Court reverse the sentence in this case and order a new hearing on punishment.

Respectfully submitted,

\_\_/s/ Michael W. Elliott_____
MICHAEL W. ELLIOTT
State Bar Number 06546540
905 Front Street
Richmond, Texas 77469
(832) 496-5000
(281) 238-3141 (fax)
Mike@Elliottslaw.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing Appellant's Brief has been mailed this, the 20th day of January, 2015, to the Fort Bend County District Attorney's Office, 301 Jackson, Richmond, Texas 77469.

\_\_\_\_/s/ Michael W. Elliott_____
Michael W. Elliott

## CERTIFICATE OF WORD COUNT

The undersigned hereby certifies that the foregoing document consists of 3,576 words in compliance with Texas Rule of Appellate Procedure 9.4.


_____/s/ Michael W. Elliott_____
Michael W. Elliott