

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

## No. 06-17-00145-CR

_____

### SAMNANG HAM, Appellant

### V.

### THE STATE OF TEXAS, Appellee

On Appeal from the 354th District Court
Hunt County, Texas
Trial Court No. 31386

Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Justice Moseley

MEMORANDUM OPINION

After Greenville police officer Robert Pemberton stopped Samnang Ham on a traffic violation and obtained Ham's consent to search his vehicle, Pemberton found methamphetamine, Xanax (alprazolam) pills, and other contraband. As a result, Ham entered an open plea of guilty to the charge of manufacture or delivery of a controlled substance, penalty group 1 (methamphetamine), in an amount of four grams or more, but less than 200 grams, and pled true to using or exhibiting a deadly weapon during the commission of the offense. Ham waived his right to a jury trial on punishment, and after a punishment hearing, the trial court sentenced him to life imprisonment.

On appeal, Ham complains that his right to due process was violated when the trial court refused to consider the full range of punishment and mitigating evidence. Since there has been no showing that the trial court refused to consider the full range of punishment or the mitigating evidence, we affirm the trial court's judgment.

## I.      Background

Ham entered an open plea of guilty before the trial court on June 5, 2017. After accepting his plea, the trial court ordered a presentence investigation (PSI) report and set the punishment hearing for July 7, 2017.

At the punishment hearing, the State introduced the PSI report and a laboratory analysis of the substance found in Ham's vehicle showing it to be 9.7 grams of methamphetamine. The State also introduced testimony showing that the contraband found in Ham's vehicle consisted of 9.7 grams of methamphetamine, 113.5 Xanax pills, $1,600.00 in cash, five loaded pistols (one of

which was stolen), a rifle, a bullet-proof vest, 367 rounds of ammunition, and digital scales. Testimony also showed that a search of Ham's house resulted in the discovery of 35.5 grams of methamphetamine, 485 grams of Xanax, digital scales, pipes, a gun found in a safe in Ham's bedroom, and a gun found in his closet. In Ham's shop, police officers found fourteen additional weapons, including semi-automatic and automatic assault rifles, a silencer, about 1,000 rounds of ammunition, and twenty-three hand grenades. In addition, the State put on evidence of the results of a forensic examination of Ham's cell phone, including photographs, video recordings, and texts showing his involvement with drugs and firearms.

After the State rested, Ham called witnesses in support of his request to be placed on community supervision. His community supervision officer testified that Ham had tested negative on all of his drug tests, had done all that he had been asked to do, and had exhibited model behavior while on bond supervision. He believed that Ham had been honest with him and that Ham had the potential to be a successful probationer. Ham's former father-in-law testified that he had employed Ham for many years and that he would continue to employ him. Ham's former wife testified that they had three children, ages fifteen, eleven, and nine, and that she had divorced him after he was arrested. She testified that Ham's drug use began about five years before his arrest. She also testified that she and the children were present when the house was searched by the officers.

Ham testified that his drug use began when one of his sons was in the hospital for a bone marrow transplant and that his drug use had gotten progressively worse. Initially, he claimed that all of the drugs that he purchased were for personal use and denied ever selling any drugs. However, he could not explain why he would have put some of the methamphetamine in individual

3

bags, or why he had digital scales at his house. Eventually, Ham admitted that he had sold methamphetamine out of his shop and that was why he had digital scales and individual packages of methamphetamine. He also admitted selling Xanax at times, but still maintained most of it was for personal use.

Following questioning by counsel, the trial court had an exchange with Ham in which the court talked about the negative effects of illegal drugs on the community and that Ham was looking at a potential life sentence for dealing drugs in the community. Later in the exchange, the trial court stated:

> THE COURT: Yeah. And here I have a guy who is a dealer, who sells those types of drugs, here sitting in my courtroom facing life in prison, who can't explain to me the very simple questions that I have that would try to make me understand that he's not a dangerous person, that he's not coming to sell drugs in my community, and he's not out to hurt people. It's real hard to believe that with the circumstances you've just given me.

The court then asked Ham if he had anything else to tell it. After he made a short additional statement, the court asked both counsel if there was anything else, to which both the State and Ham replied in the negative. The trial court then took a short recess. After returning from the recess, the court pronounced its judgment:

> THE COURT: Please rise, Mr. Ham.
> In Cause No. 31,386, Mr. Ham, after reviewing all the evidence, all the exhibits, as well as the cell phone records, the forensic report, and your interview with the police department, in this case I find that you have committed manufacture and delivery, over 4 grams less than 200 grams, and you have committed the deadly weapon allegation that's been alleged against you, which you've also pled guilty and true to. At this time you'll be sentenced to life in prison, sir.

Ham points to the trial court's comments that Ham was looking at a potential life sentence and that he was facing a life sentence as demonstrating that the trial court had abandoned any

4

sentence but the maximum sentence before all the evidence had been presented or viewed. Thus, he argues, the trial court had predetermined Ham's sentence. We disagree.

Due process requires that a neutral and detached judicial officer consider the entire range of punishment and mitigating evidence. *See Gagnon v. Scarpelli*, 411 U.S. 778, 786–87 (1973). "A court denies due process . . . if it arbitrarily refuses to consider the entire range of punishment for an offense or refuses to consider the evidence and imposes a predetermined punishment." *Teixeira v. State*, 89 S.W.3d 190, 192 (Tex. App.—Texarkana 2002, pet. ref'd) (citing *Granados v. State*, 85 S.W.3d 217 (Tex. Crim. App. 2002)). Unless there is a clear showing to the contrary, we presume that the trial court was neutral and detached and that it did not act arbitrarily. *See Roman v. State*, 145 S.W.3d 316, 319 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd).[1]

The record in this case does not clearly show that the trial court refused to consider the full range of punishment or mitigating evidence. First, we note that after Ham pled guilty, the trial court ordered the preparation of a PSI report, which was introduced into evidence. In addition, the trial court's comments were made only at the conclusion of Ham's testimony and that of his mitigation witnesses. Further, there is nothing in the trial court's comments that indicates that the trial court had predetermined the sentence to be imposed or that it did not consider the full range of punishment.[2] Rather, the trial court gave Ham an opportunity to present additional testimony

---

[1]Although Ham did not assert his complaint at the trial court, "[i]n the absence of a defendant's effective waiver, a judge has an independent duty . . . . to consider the entire range of punishment in sentencing a defendant." *Grado v. State*, 445 S.W.3d 736, 741 (Tex. Crim. App. 2014). Therefore, since there was no effective waiver by Ham, we will consider the merits of his complaint. *See id.* at 743.

[2]The cases cited by Ham in which appellate courts found the trial court had not considered the full range of punishment are clearly distinguishable. *See id.* at 738; *Ex parte Brown*, 158 S.W.3d 449, 456 (Tex. Crim. App. 2005) (per curiam); *Cole v. State*, 757 S.W.2d 864, 865 (Tex. App.—Texarkana 1988, pet. ref'd). In *Grado*, the parties and the trial court

5

or evidence.  Finally, before pronouncing sentence, the trial court took a recess to consider the evidence.

Since the record does not clearly show that the trial court did not consider the full range of punishment or the mitigating evidence, we find that the trial court did not err.  We overrule Ham's sole point of error.

For the reasons stated, we affirm the trial court's judgment.

Bailey C. Moseley
Justice

Date Submitted:     March 14, 2018
Date Decided:       March 15, 2018

Do Not Publish

---

mistakenly believed that the minimum sentence that could be imposed was ten years, when in fact, the minimum sentence was five years.  Consequently, the trial court failed to consider the full range of punishment.  *Grado*, 445 S.W.3d at 738.  In *Brown* and *Cole*, the record showed that the trial court had told the defendant when it placed him on deferred adjudication that he would receive a specific sentence if he violated probation, then imposed that sentence at the adjudication hearing.  *See Brown*, 158 S.W.3d at 451–52, 456; *Cole*, 757 S.W.2d at 864–65.  Thus, there was a clear showing in those cases that the trial court had not considered the full range of punishment and had imposed a predetermined sentence.  As discussed above, the record in this case shows that the trial court considered the evidence and then pronounced its sentence.