

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-16-00075-CR
_____

DUSTIN BENNETT SANDLIN, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 196th District Court
Hunt County, Texas
Trial Court No. 29,769

Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Chief Justice Morriss

## MEMORANDUM OPINION

After revoking Dustin Bennett Sandlin's community supervision and sentencing him to ten years' confinement, the trial court expressed regret that it was limited to assessing only a ten-year sentence. On appeal of the revocation and sentence, Sandlin argues that he was denied due process because the trial court refused to consider the full range of punishment and the mitigating evidence. Because there has been no showing that the trial court refused to consider the full range of punishment or that it ignored the mitigating evidence, we affirm the judgment of the trial court.

On April 1, 2015, Sandlin had pled guilty to indecency with a child by sexual contact[1] and was sentenced to ten years' imprisonment, but the sentence was suspended, and Sandlin was placed on community supervision for ten years. Within one year, this revocation proceeding was in motion, ultimately resulting in the ten-year sentence.

After the true/not true phase[2] of the revocation proceeding, the punishment phase was conducted. In the punishment phase, the State called Karen,[3] the child victim of the underlying offense, and her grandfather, Lester. Karen testified that she was thirteen years old on the day of

---

[1]*See* TEX. PENAL CODE ANN. § 21.11(a)(1) (West 2011).

[2]In its amended motion to revoke community supervision, the State alleged ten violations of the community supervision order including failing to register as a sex offender and three instances of self-admitted illegal drug use. In the true/not true phase of the hearing, Sandlin pled true to the three instances of illegal drug use and not true to the remaining seven allegations. Evidence was heard from the State's witnesses, including Sandlin's community supervision officer, the sex-offender registration officer for the Sulphur Springs Police Department, and Kimberly Cayla Hall, a woman with whom Sandlin lived for a short period of time. Sandlin and his brother testified on his behalf. Sandlin disputed the testimony of the State's witnesses regarding his alleged community supervision violations. He admitted to the three instances of using illegal drugs, but testified that he was thinking about consequences of his decisions and that he thought narcotics anonymous would help him. He asked the trial court to let him continue his community supervision. Based on the evidence presented at the hearing, the trial court found seven of the State's allegations true and three of the allegations not true.

[3]The child victim, her grandfather, and her friend are referred to by pseudonyms. *See* TEX. R. APP. P. 9.10.

the incident. She stated that she went with a friend, Gina, to Gina's cousin's (Sandlin's) house. She testified that she had met Sandlin about five or six months earlier. Sandlin purchased beer and vodka, and they went to Sandlin's house and drank it. Karen testified that Sandlin then began smoking marihuana and had the girls smoke it. She said that they smoked marihuana for about two hours and that she also drank vodka. That evening, Karen laid down on the guest bed while Gina went to the bathroom to change her clothes. Karen testified that Sandlin laid down on the bed, although she thought it was Gina. She said he put his arms around her and started kissing her. Although she resisted, he pulled her pants down and tried to have sex with her. Karen said that Sandlin touched her vagina with his fingers and his penis and that he put his penis inside of her butt. Gina saw them, but got her stuff and left the house. At that point, Sandlin stopped, and Karen pulled her pants up and ran after Gina. Karen testified that she told Gina what happened, and Karen also told her grandparents that night.

Karen testified that, as a result of what happened, she went to live with her mom and has lived in Michigan, Florida, and New York since it happened. She said that the reason she went to Michigan was because Sandlin told her that, if she told anyone what happened, he had friends who would kill her. She also testified that she thinks about what happened every day, that she has trouble sleeping, and that she has missed a lot of school thinking about it. On cross-examination, Karen testified that Sandlin never said anything to her during the assault or after. She also clarified that Sandlin's threat was regarding the alcohol and marihuana.

Lester testified that he has been taking care of Karen since she was in diapers. He testified that, before this incident, Karen went to school every day, went to Sunday school, and played with

3

her friends.  Since the incident happened, Karen has been in counseling for two years and started cutting herself the first year.  He said that she would cut herself once or twice a month.  She would not go to school because she said the kids were talking about her.  Lester testified that, after the incident, Karen wanted to live with her mother, who is married to a migrant worker.  He said they told him Karen attempted suicide while living with her mom.

Sandlin did not call any witnesses at the punishment hearing.  After argument by Sandlin, the trial court sentenced him to ten years' imprisonment, with credit for time served.  Then the trial court made the following statements, which are the basis of Sandlin's complaint on appeal:

> THE COURT:   I'll be honest with you.  I'm disappointed that I only have ten years to give you.  I'd love to throw a bunch more your way.  I'll be honest with you.  I recall, obviously, the testimony about your compliance with probation and that you were partly compliant with probation.  If I didn't tell you at the time I put you on probation -- because I'll go ahead and say it.  I'm the Judge that signed the papers.
>
> If I didn't tell you at that time -- I should have -- that if you screwed this up, considering what a deal you were getting -- and I think Mr. Grogan is being even generous calling it the deal of a lifetime.  It may be the deal of the century.  If I didn't tell you at the time, I should have:  Don't make a mistake.  Because the one you got away with was -- let me tell you what this Court's opinion is.
>
> Sexual assault of a child, in this opinion, robs the life of a child the same as had you put a gun to her head and pulled the trigger.  Because from now until the end of time –
>
> From now until the end of time, there is not going to be a time where this young lady doesn't have that pop back into her head, ever.  No amount of therapy, no amount of treatment, no amount of doctors with this and that is ever going to put her back the way she would have been had she been allowed to be a normal 13-year-old girl.  She was a baby.
>
> And I remember why you got probation. And I'm sorry I can only give you ten.  I'm sorry because it's not justice.  But oftentimes, the justice system can't do

4

what justice is, and I'm limited to ten years, and I'm going to give you every single
day of it.

Sandlin argues that this soliloquy by the trial court demonstrates that it failed to consider the entire range of punishment and the mitigating evidence. Therefore, he contends, he was denied due process. We disagree.

Due process requires that a neutral and detached judicial officer consider the entire range of punishment and mitigating evidence. *See Gagnon v. Scarpelli*, 411 U.S. 778, 786–87 (1973). "A court denies due process . . . if it arbitrarily refuses to consider the entire range of punishment for an offense or refuses to consider the evidence and imposes a predetermined punishment." *Teixeira v. State*, 89 S.W.3d 190, 192 (Tex. App.—Texarkana 2002, pet ref'd) (citing *Granados v. State*, 85 S.W.3d 217 (Tex. Crim. App. 2002)). Unless there is a clear showing to the contrary, we presume that the trial court did not act arbitrarily. *See Roman v. State*, 145 S.W.3d 316, 319 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd).

We have previously held that this type of complaint is not preserved for appellate review unless a timely objection is presented to the trial court. *Teixeira*, 89 S.W.3d at 192; *Cole v. State*, 757 S.W.2d 864, 866 (Tex. App.—Texarkana 1988, pet. ref'd); *see also Hull v. State*, 67 S.W.3d 215, 217 (Tex. Crim. App. 2002) (defendant waived due process complaint when raised for first time on appeal). However, Sandlin asserts that failure to consider the full range of punishment is fundamental error, and also appears to argue that the error must have been expressly waived. He also argues that we may make a determination of a due process violation even if we find the issue was waived. *See Brumit v. State*, 206 S.W.3d 639, 645 (Tex. Crim. App. 2006).

5

In *Brumit*, the appellant complained that, based on certain comments made by the trial court before sentencing, he was denied his due process rights to an impartial tribunal and that such error was fundamental error. *Id.* at 640. The Amarillo Court of Appeals refused to address the merits of his complaint, holding that he had forfeited them by failing to either object at the time of sentencing or assert them in a motion for new trial. *Id.* at 641. The Texas Court of Criminal Appeals rejected the appellant's fundamental-error argument, pointing out that whether a Texas appellate court may address unassigned error is determined by the test set forth in *Marin v. State*, 851 S.W.2d 275 (Tex. Crim. App. 1993), *overruled on other grounds by Cain v. State*, 947 S.W.2d 262 (Tex. Crim. App. 1997)). *Brumit*, 206 S.W.3d at 644.

*Marin* held that there are three distinct kinds of rights: "(1) absolute requirements and prohibitions; (2) rights of litigants which must be implemented by the system unless expressly waived; and (3) rights of litigants which are to be implemented upon request." *Marin*, 851 S.W.2d at 279. Procedural default by failing to make a timely objection or motion applies only to the third category. *See id.* In *Brumit*, the Texas Court of Criminal Appeals declined to decide whether the appellant's due process complaint was one that must be preserved by a timely objection to the trial court, pointing out that the record in that case did not show partiality by the trial court or that a predetermined sentence was imposed. *Brumit*, 206 S.W.3d at 644–45.

However, in a recent case, the Texas Court of Criminal Appeals considered whether a defendant's right to be sentenced by a judge who considers the entire range of punishment is subject to procedural default. *Grado v. State*, 445 S.W.3d 736, 737 (Tex. Crim. App. 2014). In *Grado*, the court held that this right is a *Marin* category-two right. *Id.* at 741. Under this category,

6

"a defendant 'need make no request at trial for the implementation of such rights, as the judge has an independent duty to implement them.'" *Id.* (quoting *Marin*, 851 s.W.2d at 280). Thus, the court held that "[i]n the absence of a defendant's effective waiver, a judge has an independent duty . . . to consider the entire range of punishment in sentencing a defendant irrespective of a defendant's request that he do so." *Id.* As such, the court held that, in the absence of an effective waiver, a defendant's complaint that the trial judge did not consider the full range of punishment will not be procedurally defaulted, and a court of appeals should consider the merits of the complaint. *See id.* at 743. In this case, there is no effective waiver. Therefore, we will consider the merits of Sandlin's complaint.

As in *Brumit*, in this case, the record does not show that the trial court refused to consider the full range of punishment or mitigating evidence. First, the comments by the trial court were made after it had heard and apparently considered all of the evidence presented at both phases of the revocation hearing. There is nothing in the trial court's comments that indicates that it had predetermined the sentence to be imposed or that it did not consider the full range of punishment. Rather, the court's comments show that it based its final determination on the nature of the crime and the impact the assault had on Sandlin's victim, who was thirteen years old at the time of the assault. Further, in its comments, the trial court referenced the evidence that Sandlin had partially complied with the community supervision order. In addition, the record shows that it did not find

all of the State's allegations true, but just those allegations that it found were supported by the evidence. This suggests that it considered defense-oriented evidence put on at the first hearing.[4]

Since the record does not show that the trial court did not consider the full range of punishment or that it ignored the mitigating evidence, we find that the trial court did not err. We overrule Sandlin's point of error.

---

[4]These comments are clearly distinguishable from those found in the cases cited by Sandlin where appellate courts found the trial court had predetermined the sentence imposed. *See McClenan v. State*, 661 S.W.2d 108, 110 (Tex. Crim. App. 1983), *overruled on other grounds by DeLeon v. Aguilar*, 127 S.W.3d 1 (Tex. Crim. App. 2004); *Howard v. State*, 830 S.W.2d 785 (Tex. App.—San Antonio 1992, pet. ref'd); *Jefferson v. State*, 803 S.W.2d 470, 471 (Tex. App.—Dallas 1991, pet. ref'd); *Cole v. State*, 757 S.W.2d 864, 865 (Tex. App.—Texarkana 1988, pet. ref'd). In *Howard*, the trial court admonished the defendant before it placed him on deferred adjudication that it thought the defendant should "go to TDC for 99 years" and warned him that if he did something to jeopardize his liberty, "[t]he chances are very good that you'll get 99 years." *Howard*, 830 S.W.2d at 787. At the hearing to revoke probation and adjudicate guilt, the trial court told the defendant, "I admonished you, I told you you were facing the full range of punishment, from five to 99 years or life," then sentenced the defendant to ninety-nine years' confinement. *Id.*

In *Jefferson*, the trial court told the defendant when he placed him on deferred adjudication that, if he violated his probation, the court would give him a maximum twenty-year sentence, and told the probation officer to make a note of it. *Jefferson*, 803 S.W.2d at 471. At the revocation and adjudication hearing, the judge asked the probation officer if he promised the defendant anything, and he said, "[Y]es, 20 years." *Id.* at 472. The trial court then adjudicated the defendant guilty and sentenced him to twenty years' confinement. *Id.* at 470.

Finally, in *Cole*, the trial court placed the defendant on deferred adjudication, but told him that, if he came back for any reason, he would get seventy-five years. *Cole*, 757 S.W.2d at 864–65. At the revocation and adjudication hearing, the trial court sentenced the defendant to seventy-five years' confinement, and reminded him that he had a "contract" with the court and that the court followed through with what it promised. *Id.* at 865.

In each of these cases, the record showed that the trial court had told the defendant at the time he was placed on community supervision that he would receive a specific sentence if he violated probation, then imposed that sentence at the revocation hearing. Thus, there was a clear showing in those cases that the trial court had not considered the full range of punishment and had imposed a predetermined sentence. In this case, however, there is no indication in the record, nor does Sandlin contend, that the trial court told him at the time he was placed on community supervision that he would receive a certain sentence if he violated the supervision order. Further, as discussed above, the record in this case shows that the trial court considered the evidence and proceeded "to dispose of the case as if there had been no community supervision." *See* TEX. CODE CRIM. PROC. ANN. art. 42.12, § 23(a) (West Supp. 2016).

We affirm the judgment of the trial court.


Josh R. Morriss III
Chief Justice

Date Submitted:     October 6, 2016
Date Decided:      October 14, 2016

Do Not Publish