

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-17-00086-CR

JOHN MICHAEL SHAVER, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 354th District Court
Hunt County, Texas
Trial Court No. 30,852

Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Justice Moseley

## MEMORANDUM OPINION

On May 4, 2016, John Michael Shaver entered a plea of guilty to family violence assault by impeding normal breathing or circulation of blood, this assault having taken place October 19, 2013.[1] The trial court deferred his adjudication of guilt, and he was placed on eight years' community supervision. Eight months later, Shaver was arrested for driving while intoxicated (DWI), third offense, and the State moved to adjudicate his guilt and to revoke his community supervision. After a hearing, Shaver was adjudicated guilty and received a ten-year sentence. On appeal, Shaver argues that he was denied due process, alleging that the trial court refused to consider the full range of punishment and mitigating evidence. Since there has been no showing that the trial court refused to consider the full range of punishment or mitigating evidence, we affirm the trial court's judgment.

## I.     Background

Less than six weeks after Shaver had pled guilty and was placed on community supervision, he admitted having used methamphetamine. He was, accordingly, ordered by the trial court to serve a three-day jail sanction and to successfully attend and complete all recommendations resulting from his substance abuse evaluation. Further, within seven months of his having been placed on community supervision, Shaver was arrested for DWI, third offense. After this charge, the State moved to adjudicate his guilt and to revoke his community supervision. In its petition to adjudicate, the State alleged that Shaver should be adjudicated because he (1) committed the DWI,

---

[1]*See* TEX. PENAL CODE ANN. § 22.01(b)(2)(B) (West Supp. 2016).

third offense, (2) failed to perform his community service hours for October and November 2016, and (3) failed to participate in and complete his drug offender education.

After Shaver pled true to having committed the DWI, third offense, the State abandoned its two other allegations and proceeded to seek adjudication and revocation based only on the DWI, third offense. During the true/not true phase of the revocation hearing, the State introduced certified copies of Shaver's two prior DWI convictions. In addition, Melissa Mason testified that Shaver came to her house while intoxicated on the night of December 4, 2016, and yelled as he beat on her door. She testified that she refused Shaver's request to take him home because she was afraid of him, explaining that about a year earlier, Shaver had physically assaulted her by pushing her to the ground, slapping her, and banging her head on the cement several times. Trooper Gregory Joiner of the Texas Department of Public Safety testified that on the night of December 4, 2016, he responded to an automobile accident in which Shaver was involved as a driver. He testified that Shaver admitted that he had consumed alcohol and that three field sobriety tests performed on Shaver yielded sixteen out of eighteen clues indicating his intoxication.

After the trial court adjudicated Shaver guilty of family violence by impeding normal breathing or circulation of blood, the punishment phase was conducted. Cindy Ware, a court officer for the Hunt County Community Supervision and Corrections Department, testified that Shaver had admitted using methamphetamine about a month after having been placed on community supervision. She opined that he was not a good candidate for community supervision because he had another DWI less than a year after being placed on community supervision, and further that he had admitted that he has anger, drug, and alcohol issues. In addition, she testified

3

that even though he had been ordered by the trial court in July to attend drug offender classes, he did not attend or complete them. She also did not think he was a good candidate for a SAFPF[2] program because he had not followed recommendations made to him, was six months behind on his community service hours, and failed to attend his drug education classes.

Shaver testified that he had paid for the drug offender program, that he had been scheduled to start the program the week after he was arrested, and that he had been in jail for three months. He asserted that he had done some of his community service hours and that he had attempted to do additional hours. He testified that he is an alcoholic, that he has a drug problem, and that he got drunk every day after work. He claimed that he had been attending Narcotics Anonymous meetings before he went to jail and that he had been attending Overcomers while he was in jail. Shaver testified that he was committed to getting sober and going to a SAFPF program, which he believed would give him the opportunity to get sober. He also said that the assault of Mason and his DWIs were all committed because he was drunk.

On cross-examination, Shaver made several admissions regarding his past use of marihuana, methamphetamine, and alcohol, together with experiences he had with the courts in Hunt County as a result (including multiple DWI charges). He also admitted having assaulted a different female. He further testified that he had not tried to get help for his alcohol problem without a court order.

After his counsel and the State indicated they had no further questions for Shaver, the trial court had the following exchange with Shaver:

---

[2]Substance abuse felony punishment facility. *See* TEX. CODE CRIM. PROC. ANN. art. 42A.303 (West Supp. 2016).

4

THE COURT: Why did you not ask for SAFPF while you were on probation the six months before -- seven months before you committed this DWI?

THE DEFENDANT: I wish I would have.

THE COURT: I wish you would have, too. It might have been a viable option then. It's not a viable option now. You've put yourself in a situation where you are a risk to our community, a danger to our community, and I have to decide what to do with you. And you let it get this far. I hope you realize that.

THE DEFENDANT: Yes, ma'am. Yes, ma'am.

THE COURT: SAFPF is for people who come to us when they don't have any charges or a new offense for DWI and ask for SAFPF. That's when I would have considered it. Back when -- July 16th of 2016, when you used methamphetamine, that would have been the time for you to be asking for SAFPF, not now.

THE DEFENDANT: Your Honor, I -- I did go to -- to meetings. I was going to meetings regularly.

THE COURT: Well, these meetings haven't helped you. If those meetings had helped you, you wouldn't have used methamphetamines in -- in July, and you wouldn't have come back and committed a new DWI, right?

THE DEFENDANT: (Moving head up and down.)

THE COURT: You understand what -- the evidence presented to me today is that while this case was pending that you assaulted another female. You understand that?

THE DEFENDANT: (Moving head up and down.)

THE COURT: Yes?

THE DEFENDANT: Yes, ma'am. Yes, ma'am.

THE COURT: In a violent manner.

THE DEFENDANT: Yes.

5

THE COURT: Yes. You understand you're on probation for a violent assault of a female?

THE DEFENDANT: Yes, ma'am. Yes, ma'am.

THE COURT: For choking her.

THE DEFENDANT: Yes, ma'am. Yes, ma'am.

THE COURT: So while you're on -- this case is pending, I've got you assaulting another female in a violent manner, I've got you committing DWI second while this case is pending, and now a DWI third while on probation. Do you understand that?

THE DEFENDANT: Yes, ma'am.

THE COURT: You said that you drink every day; is that correct, sir?

THE DEFENDANT: Yes, ma'am. Yes, ma'am.

. . . .

THE COURT: I asked you -- you told me you drank every single day and get drunk.

THE DEFENDANT: Yes, ma'am. Yes, ma'am.

. . . .

THE COURT: I'm asking you how often you drive. Do you drive every day?

THE DEFENDANT: No, ma'am. I don't drive every day.

THE COURT: How often do you drive drunk? 'Cause I guarantee you it's more than the one time you got caught.

THE DEFENDANT: Yes, I have. I have drove drunk just on the -- like the back roads to look for -- like just to -- especially on -- on the DWI, I did not want to be driving. It was the back roads.

THE COURT: Why weren't you walking?

6

THE DEFENDANT:  'Cause it's a long ways over to Melissa's house.

THE COURT:  Well, you know, sometimes times are tough and you walk.

THE DEFENDANT:  Yes, ma'am.

THE COURT:  You would have gotten a PI versus a DWI if you were walking.  You understand that?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  When you're driving a vehicle, you're driving a several-hundred-pound obstacle down a road when you're not in full control of your faculties.  You get that, right?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  People are killed in drunk driving accidents every single day. You understand that?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  But for the grace of God, you didn't harm anyone that night, but you sure did some damage to someone else's property.  You understand that?

THE DEFENDANT:  Yes, ma'am.

After Shaver and the State made their final arguments, the trial court sentenced Shaver to ten year's imprisonment.  Before imposing its sentence, the trial court stated

THE COURT:  All right.  Mr. Shaver, it's now the Court's responsibility to determine what to do with you now that I found you guilty of this -- violating these terms and the conditions of probation.

The evidence that I've heard in this case has shown me that, while on probation, you continue to use alcohol.  You continue to use drugs.  You continued to commit new offenses against the State of Texas.  You continued, in fact, to commit a violent offense against another female while this case was pending along the same lines of the offense for which you are convicted and for which you are facing felony prison time.

7

It shows to me that there's a lack of disregard [sic] for others; that you put yourself before others; that you chose to drive while intoxicated on numerous occasions, including the time you got caught; that you chose to put Ms. Mason in a situation where she had to call the police to get you physically removed from her property after you had assaulted her and showed up drunk at her house. You realize you're putting your friend in that position. You are. No one else.

I have to look out for the safety of this community. But more than that, I have to hold you accountable for your own actions. And, Mr. Shaver, you've given me nothing that shows me that there's any reason for me to expect a change in your behavior.

During this time frame, if you had wanted or asked for my help before you got a new offense, I would have been happy to consider it then. I would have been happy to realize that maybe someone on probation came forward honestly and asked for a chance. But in this case, you didn't ask for a chance until your hand was caught and slapped. And it wasn't caught and slapped until after you'd done way too many things in violation of my probation for me to even consider giving you another opportunity.

After sentencing, Shaver told the trial court that he had written to his attorney several times about going to a SAFPF program, but admitted after questioning by the trial court that he had done so only after he was arrested for the DWI, third offense. The trial court then told Shaver

THE COURT: Exactly. Which is my complete -- I've already sentenced you to ten years. I'm not changing my mind.

I hope the State files a DWI third, and I hope that case goes forward 'cause I think it should. But, at this point, all I have the ability to sentence you for is ten years, so that's what you're getting.

## II.     Analysis

Shaver argues that the exchange between him and the trial court and, particularly, the comments by the trial court show that it failed to consider the entire range of punishment and the mitigating evidence. As a result, he contends, he was denied due process. We disagree.

Due process requires that a neutral and detached judicial officer consider the entire range of punishment and mitigating evidence. *See Gagnon v. Scarpelli*, 411 U.S. 778, 786–87 (1973).

8

"A court denies due process . . . if it arbitrarily refuses to consider the entire range of punishment for an offense or refuses to consider the evidence and imposes a predetermined punishment." *Teixeira v. State*, 89 S.W.3d 190, 192 (Tex. App.—Texarkana 2002, pet. ref'd) (citing *Granados v. State*, 85 S.W.3d 217 (Tex. Crim. App. 2002)). Unless there is a clear showing to the contrary, we presume that the trial court was neutral and detached and that it did not act arbitrarily. *See Roman v. State*, 145 S.W.3d 316, 319 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd).[3]

The record in this case does not clearly show that the trial court refused to consider the full range of punishment or mitigating evidence. The exchange between the trial court and Shaver, and its comments before sentencing, occurred after it had heard and apparently considered all of the evidence presented at both phases of the revocation hearing. Further, there is nothing in the exchange, or in the trial court's comments, that indicate that it had predetermined the sentence to be imposed, or that it did not consider the full range of punishment.[4] Rather, the exchange and the court's comments demonstrate that its final determination was based on the nature of the crime,

---

[3]Although Shaver did not assert his complaint at the trial court, "[i]n the absence of a defendant's effective waiver, a judge has an independent duty . . . to consider the entire range of punishment in sentencing a defendant." *Grado v. State*, 445 S.W.3d 736, 741 (Tex. Crim. App. 2014). Therefore, since there was no effective waiver by Shaver, we will consider the merits of his complaint. *See id.* at 743.

[4]The cases cited by Shaver where appellate courts found that the trial court had predetermined the sentence imposed are clearly distinguishable. *See Ex parte Brown*, 158 S.W.3d 449, 456 (Tex. Crim. App. 2005) (per curiam); *Howard v. State*, 830 S.W.2d 785 (Tex. App.—San Antonio 1992, pet. ref'd); *Jefferson v. State*, 803 S.W.2d 470, 471 (Tex. App.—Dallas 1991, pet. ref'd); *Cole v. State*, 757 S.W.2d 864, 865 (Tex. App.—Texarkana 1988, pet. ref'd). In each of those cases, the record showed that the trial court had told the defendant when it placed him on deferred adjudication that he would receive a specific sentence if he violated probation, then imposed that sentence at the adjudication hearing. *See Brown*, 158 S.W.3d at 451–52, 456; *Howard*, 830 S.W.2d at 787; *Jefferson*, 803 S.W.2d at 470–72; *Cole*, 757 S.W.2d at 864–65. Thus, there was a clear showing in those cases that the trial court had not considered the full range of punishment and had imposed a predetermined sentence. In this case, however, there is no indication in the record, nor does Shaver contend, that the trial court told him at the time he was placed on deferred adjudication that he would receive a certain sentence if he violated the supervision order. Further, as discussed above, the record in this case shows that the trial court considered the evidence and proceeded "to dispose of the case as if there had been no community supervision." *See* TEX. CODE CRIM. PROC. ANN. art. 42.12, § 23(a) (West Supp. 2016).

on Shaver's additional assault and second DWI while the current charge was pending, on his continued abuse of alcohol and drugs and his third DWI while on community supervision, and on his failure to start and complete drug education classes that had been ordered by the trial court over four months before his latest DWI arrest.  Further, although the trial court did not grant Shaver's request to be placed in a SAFPF program, the evidence would support a conclusion that Shaver's request was motivated by a desire to avoid imprisonment, rather than a desire to obtain sobriety.

Since the record does not clearly show that the trial court did not consider the full range of punishment or mitigating evidence, we find that the trial court did not err.  We overrule Shaver's sole point of error.

For the reasons stated, we affirm the trial court's judgment.


Bailey C. Moseley
Justice

Date Submitted:     November 8, 2017
Date Decided:       November 9, 2017

Do Not Publish